**JELLISON LAW OFFICES, PLLC**
3101 North Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-6009
Facsimile: (602) 230-9250
E-mail: jim@jellisonlaw.com

JAMES M. JELLISON, ESQ. #012763
*Attorney for Defendants City of Prescott, Mayor Marlin Kuykendall, and Tana Kuykendall*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kay Anne Riley, | Case No. CV-2011-08123-JAT |
| Plaintiff, | |
| vs. | **CITY OF PRESCOTT DEFENDANTS' MOTION TO DISMISS** |
| City of Prescott, Arizona, a political subdivision; Yavapai Humane Society, an Arizona non-profit corporation; Marlin Kuykendall, individually and in his official capacity as Mayor of the City of Prescott, and Tana Kuykendall, husband and wife; Steve Norwood, individually and in his official capacity as City Manager of the City of Prescott and Shelly Norwood, husband and wife; Ed Boks and Adele Langdon, husband and wife; Marty Goodman and Jane Doe Goodman, husband and wife, | |
| Defendants. | |

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants City of Prescott, Mayor Marlin Kuykendall, and his wife, Tana Kuykendall [collectively, also known as the "City of Prescott Defendants"], through undersigned counsel, hereby submit their Motion To Dismiss requesting that Plaintiff's Complaint be dismissed as to them. Plaintiff's Complaint is subject to dismissal at this early stage because 1) the scant facts alleged are

1

insufficient to support any of Plaintiff's causes of action; 2) Mayor Kuykendall is entitled to qualified immunity on the sole federal claim; and 3) an examination of the legal standard for each claim shows that they are all unsupported by fact or law.

This Motion is supported by the attached Memorandum of Points & Authorities which is incorporated herein by this reference.

DATED this 15th day of August, 2011.

JELLISON LAW OFFICES, PLLC

By: s/ James M. Jellison
James M. Jellison
*Attorney for Defendants City of Prescott, Mayor Marlin Kuykendall and Tana Kuykendall*

## **MEMORANDUM OF POINTS & AUTHORITIES**

On August 10, 2011, Plaintiff Kay Anne Riley filed her Complaint in this matter alleging wrongful termination from her employment with a non-governmental entity, Defendant Yavapai Humane Society. [Complaint, Dkt.1, paragraph 13]. In addition to suing her actual employer, Plaintiff has also brought suit against the City of Prescott, its Mayor, Marlin Kuykendall, and his wife, Tana Kuykendall. [Complaint, Dkt. 1, paragraphs 7, 9].[1] Based upon scant, conclusory, and vague allegations, Plaintiff raises a single federal

---

[1] The Complaint also alleges claims against the City of Prescott's former City Manager Steve Norwood and his spouse. Mr. Norwood has neither been served nor accepted service at this stage. It is worth noting, however, that Plaintiff's Complaint does not contain a single, well-pled factual allegation that implicates Mr. Norwood in regard to any wrongdoing whatsoever. Plaintiff's treatment of Mr. Norwood in the Complaint is indicative of the "shoot first, ask questions later" approach that Plaintiff appears to be taking with the City of Prescott and its officials and employees.

2

claim pursuant to 42 U.S.C. §1983 alleging First Amendment-based retaliation [Count I], and six additional state law claims alleging statutory wrongful termination, tortious interference with employment, defamation, false light invasion of privacy, blacklisting under A.R.S. §23-1361, and intentional infliction of emotional distress [Counts II-VII, respectively].

## I.   STANDARD OF REVIEW.

The Court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to

see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ___U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal,* 129 S.Ct. at 1949.  Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 1249 S.Ct. at 1950.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See, Shwarz v. U.S.,* 234 F.3d 428, 435 (9th Cir. 2000).  Nonetheless, the Court does not have to accept

as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Likewise, "[c]onclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown,* 504 F.3d 903, 910 (9th Cir. 2007).

## II.   STATEMENT OF FACTS MATERIAL TO THIS MOTION.

As stated above, Plaintiff's well-pled allegations of fact against the City of Prescott and Mayor Kuykendall are so scant that reciting them can be done quite briefly. It should be noted, however, that the City of Prescott Defendants recite the Plaintiff's allegations, pretending them to be true, only because of the standard of review that requires this Court to take Plaintiff's well-pled, non-conclusory allegations as such. In reality, the City of Prescott and Mayor Kuykendall are emphatic that they had no hand in Plaintiff's job termination, and did not, in any way, counsel, urge, or suggest that any adverse action be taken against Plaintiff. With that said, we turn to the allegations of the Complaint.

Plaintiff was employed by Defendant Yavapai Humane Society ["YHS"] from July 2009 until November 2010, where she acted as a Marketing Manager and, later, a Marketing and Development Director. [Complaint, Dkt. 1, paragraph 13]. YHS is a non-profit Arizona corporation that provides animal sheltering and animal control services in Yavapai County, Arizona. [Complaint, Dkt. 1, paragraph 8, 17]. Pursuant to an independent contractor agreement, YHS also provides these same services to the City of Prescott. [Complaint, Dkt. 1, paragraphs 15-22].

During the fall of 2010, Plaintiff helped found a group called the Prescott Citizens Against Bullies ["PCAB"] which, soon thereafter, publicly assembled to demonstrate

5

against, and question, the termination and subsequent treatment of a former City of Prescott employee, and alleged threats, intimidations, and "bullying" toward some unidentified person or persons from, or directed by, City of Prescott personnel, including Mayor Kuykendall and former City Manager Steve Norwood. [Complaint, Dkt. 1, paragraphs 27-31]. On or about October 26, 2010, Plaintiff issued a press release regarding a scheduled demonstration at Prescott City Hall. [Complaint, Dkt. 1, paragraphs 33-34]. Thereafter, the YHS put Plaintiff on a paid administrative leave. [Complaint, Dkt. 1, paragraphs 34-42, 44]. On November 1, 2010, while still on administrative leave, Plaintiff participated in the scheduled PCAB demonstration at Prescott City Hall where Plaintiff allegedly "spoke out" against Mayor Kuykendall and then-City Manager Steve Norwood. [Complaint, Dkt. 1, paragraphs 46-51]. The demonstration was also featured the next day in a Prescott Courier article. [Complaint, Dkt. 1, paragraphs 50-52]. On November 3, 2010, YHS reprimanded Plaintiff, and on November 12, 2010, YHS terminated her employment, allegedly noting, among other things, that Plaintiff's involvement in the November 1, 2010 demonstration "displayed poor judgment and reflected poorly on [YHS]." [Complaint, Dkt. 1, paragraphs 53-73].

Plaintiff provides only scant and conclusory allegations in an attempt to connect her job termination by YHS with the City of Prescott Defendants. First, Plaintiff alleges a hearsay statement that YHS Director Ed Boks told Plaintiff that Mayor Kuykendall had allegedly told him that he "objected to" the demonstration and Plaintiff's involvement. [Complaint, Dkt. 1, paragraph 37]. Second, Plaintiff alleges the hearsay upon hearsay statement that Mr. Boks told Plaintiff that YHS Board Member Marty Goodman told him

6

that somebody said the Mayor and City Council "feel this is a Yavapai Humane Society issue." [Complaint, Dkt. 1, paragraph 41]. Finally, Plaintiff speculates "upon information" that Mayor Kuykendall allegedly either threatened to cancel or not renew the YHS contract because of Plaintiff's involvement with the PCAB. [Complaint, Dkt. 1, paragraphs 57, 75].

### III.   LEGAL ANALYSIS.

#### A.   ALL CLAIMS

##### 1.   Plaintiff Has Failed To State Sufficient Facts To Maintain Either Federal Or State Law Claims.

Plaintiff's necessary, central allegation, that the City of Prescott and/or Mayor Kuykendall threatened cancellation or non-renewal of the YHS contract because of Plaintiff's involvement with the PCAB, is not actually stated as a known fact, but, rather, is merely stated with the prefatory lawyer-speak of "upon information" or "upon further information." [Complaint, Dkt. 1, paragraphs 57, 75]. Of course, among attorneys and judges this is generally recognized as code for, "I don't really know if this is an actual fact, or not." Based on the pleading standard enunciated in *Iqbal, supra.,* a plaintiff does not state a "plausible" claim for relief when she is unable to state the central and necessary allegations as actual facts, but merely states that they are facts that she hopes exist "upon information."

In *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1268 (11th Cir. 2009), the court, applying *Iqbal,* determined that allegations of conspiracy "based on information and belief" were vague and conclusory, and insufficient to "nudge [plaintiffs'] claims across

the line from conceivable to plausible." Recently, in *Vivendi S.A. v. T-Mobile, USA, Inc.,* 586 F.3d 689, 694 (9th Cir. 2009), the court, also citing *Iqbal,* found that allegations made only "upon information and belief" that a party conducted business in the United States were insufficient to establish plausibly that a U.S. entity participated in the alleged fraud so as to support choice of forum. Finally, in *Lantiq North America, Inc. v. Ralink Technology Corp.* 2011 WL 2600747, 7 (N.D.Cal. 2011), the court, recognized that *Iqbal* creates a two-prong analysis that, first, requires the court to distinguish factual allegations which must be taken as true, from "legal conclusion[s] couched as factual allegation[s]," and, second, to evaluate whether the factual allegations present a "plausible claim for relief." With this framework, the court further concluded that a broad but non-specific list, made "upon information and belief," of allegedly patent-infringing products was insufficient to state a valid patent infringement claim. *Id.*

As to the City of Prescott Defendants, when we separate factual allegations from purely legal conclusions, we are left only with alleged hearsay statements that Mayor Kuykendall had some form of "objection" to the planned PCAB demonstration and Plaintiff's involvement, and that someone stated that the Mayor allegedly feels this is a "Yavapai Humane Society issue." [Complaint, Dkt. 1, paragraphs 37, 41]. Even if true, these allegations are insufficient to demonstrate that a plausible claim exists against the City of Prescott Defendants for the federal and state claims found in the Complaint.

Anyone can file a lawsuit. However, when Plaintiff filed her suit against the City of Prescott Defendants she took an action which has the effect of immediately burdening the taxpayers of the City of Prescott. The City of Prescott Defendants urge this Court to

apply the standards in *Iqbal* in order to dismiss these frivolous claims and put an immediate end to that burden.

### B.     THE FEDERAL CLAIM

For the reasons cited above, the well-pled factual allegations of Plaintiff's Complaint do not support any federal or state claim. In addition to that, the following issue of qualified immunity applies to the sole federal claim.

### 2.     Mayor Kuykendall Is Entitled To Qualified Immunity In His Individual Capacity On Plaintiff's Federal Claim.

The Supreme Court has recognized the right of independent contractors to bring First Amendment retaliation claims based on a governmental entity's nonrenewal of an *at-will* contract *with that contractor. See, Bd. of County Comm'rs v. Umbehr,* 518 U.S. 668, 684 (1996). In *Clairmont v. Sound Mental Health,* 632 F.3d 1091 (9th Cir. 2011), the Ninth Circuit recognized that this same claim may, under certain circumstances, extend to an employee of the independent contractor. *Clairmont* also recognizes that when the claim is so extended, principles of qualified immunity apply. *Id.*

Here, Plaintiff asserts that she is a "public employee" and that Mayor Kuykendall's alleged actions were performed in his "individual" capacity. [Complaint, Dkt. 1, paragraphs 6, 9]. As stated above, even if it were true that Mayor Kuykendall had stated he had "objections" to the PCAB demonstration and Plaintiff's involvement, and that he, at some point, felt this was a "Yavapai Humane Society" issue, those statements and feelings, alone, would not constitute a violation of clearly established First Amendment anti-retaliation law. Accordingly, qualified immunity should be applied and

9

Mayor Kuykendall (and his spouse) dismissed as to the federal claim in his individual capacity. *See, Pearson v. Callahan,* 555 U.S. 223 (2009); *see also Saucier v. Katz,* 533 U.S. 194 (2001).

Additionally, this Court should consider the pleading deficiencies cited above in assessing qualified immunity. More specifically, Plaintiff's unsupported allegations based only "upon information" should not be used to defeat qualified immunity at its earliest stages. The Federal Rules of Civil Procedure do not permit the development of insufficient complaints through the discovery process, and this is particularly important where government officials are entitled to qualified immunity. *Iqbal,* ___ U.S. at ___, 129 S.Ct. at 1953.

### C.     THE STATE LAW CLAIMS

For the reasons cited above, the well-pled factual allegations of Plaintiff's Complaint do not support any state law claim. In addition to that, the following issues apply to each of the separately alleged state claims.

**3.     Plaintiff's Complaint Fails To State A Valid Wrongful Termination Claim.**

Plaintiff's Second Count is an alleged state law public policy wrongful termination action brought pursuant to A.R.S. §23-1501(3)(b). [Complaint, Dkt. 1, p. 18, lls. 1-3]. However, the only state authority that Plaintiff claims to have been wrongfully terminated under is a state constitutional provision, namely, Ariz.Const. Art. II, §§ 5, 6, which concerns the rights of petition, free speech, and free press. [Complaint, Dkt. 1, p. 18, lls. 4-18].

A.R.S. §23-1501(3)(b) only provides a remedy for terminations in violation of a "statute of this state." A.R.S. §23-1501(3)(b), under its express terms, does not provide a remedy for a termination in violation of a state constitutional provision. Accordingly, that part of Plaintiff's wrongful termination claim based on an alleged violation of Arizona's constitutional free speech provision is not a recognized cause of action, and the City of Prescott Defendants are entitled to dismissal.

Additionally, A.R.S. §23-1501(3)(b) wrongful termination claims, by the express language of the statute, are reserved only for claims by "employees" against their "employers." Generally speaking, an employer may not be held liable to an independent contractor under the various statutes that require an employer-employee relationship for liability. *See e.g., Adcock v. Chrysler Corp.,* 166 F.3d 1290, 1292 ("Title VII protects employees, but does not protect independent contractors"). Accordingly, had Plaintiff only been an independent contractor to Defendant YHS, she would be unable to maintain an A.R.S. §23-1501(3)(b) claim against YHS. Likewise, had Plaintiff Riley been a direct independent contractor of the City of Prescott, she still would be unable to maintain an A.R.S. §23-1501(3)(b) claim against the City. Accordingly, it would make no sense to hold the City of Prescott Defendants could be held liable under A.R.S. §23-1501(3)(b) when the actual relationship is even more tenuous here; Plaintiff Riley being an employee of a private corporation that, in turn, is merely an independent contractor to the City of Prescott.

//

//

### 4. Plaintiff's Complaint Fails To State A Valid Claim For Tortious Interference With Contract.

The elements of the tort of intentional interference with contract are settled in Arizona: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) improper action on the part of the defendant. *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 34, 730 P.2d 204, 211 (1987); *Wagenseller v. Scottsdale Mem. Hosp.,* 147 Ariz. 370, 386–88, 710 P.2d 1025, 1041–43 (1985). Wrongful interference rests on improper conduct by the defendant, a stranger to the contract, not on whether a breach followed. *Bar J Bar Cattle Co. v. Pace,* 158 Ariz. 481, 763 P.2d 545 (App. 1988). In *Wagenseller,* the Arizona Supreme Court adopted the seven factors enumerated in *Restatement (Second) of Torts* §767 as the elements to be considered in determining whether a defendant's interfering conduct was improper. 147 Ariz. at 388, 710 P.2d at 1043. Under this standard, the court should consider: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *Id.* Accordingly, to sustain the claim, Plaintiff must allege facts showing that the City of Prescott Defendants acted illegally or inequitably, for example, by committing fraud, duress, or abusing economic power. *See generally, Dobbs* at 365–72; *see also, Bar*

*J Bar Cattle, supra.* By way of example, Arizona courts have found unlawful interference where the defendant secured the discharge of an employee who refused to act in an arguably criminal way, *Wagenseller,* 147 Ariz. at 381, 710 P.2d at 1036; or wrongfully claimed the right to control water rights leased by the plaintiff to a third party, *Tipton v. Burson,* 73 Ariz. 144, 238 P.2d 1098 (1951); or where a mortgagee claimed in bad faith the right to enforce a due-on-sale clause, *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 730 P.2d 204 (1987).

Here, the well-pled allegations of the Complaint contain none of the necessary allegations or acts to sustain the claim but show only, as argued above, that the City of Prescott Defendants allegedly had some form of objection to the November 1, 2010 demonstration and Plaintiff's involvement, and felt that it was a "Yavapai Humane Society" issue. These allegations do not meet the elements of the tort and Count III should be dismissed as to the City of Prescott Defendants.

### 5. **Plaintiff's Complaint Fails To State A Valid Claim For Defamation Or False Light Invasion Of Privacy.**

In short, the tort of defamation requires a showing of the following elements, 1) a false and defamatory statement which is of and concerning the plaintiff; 2) publication; 3) the defendant must have some degree of fault; and 4) the statement caused damage. *See, Fendler v. Phoenix Newspapers, Inc.,* 130 Ariz. 475, 478-79, 636 P.2d 1257, 1260-61 (App. 1981). Likewise, the tort of false light invasion of privacy has been recognized in Arizona and includes a showing that 1) the defendant gave publicity to a matter concerning the plaintiff; 2) the matter places the plaintiff before the public in a false light; 3) the false light

in which the plaintiff was placed would be highly offensive to a reasonable person; and 4) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  Restatement (Second) of Torts, sec. 652E (1977); *see also, Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989).  In order to be actionable, the publication must involve a *major misrepresentation* of the plaintiff's character, history, activities, or beliefs, and not merely a minor or insignificant inaccuracy.  *Godbehere,* 162 Ariz. at 341, 783 P.2d at 787.

Plaintiff's Complaint does not contain a single allegation that the City of Prescott Defendants published any material concerning Plaintiff that was either false, or which placed her in a false light before the public on a matter highly offensive to a reasonable person. [Complaint, Dkt. 1].   The absence of any factual allegation that would support these central elements of defamation and false light invasion of privacy are fatal to the maintenance of these claims.   Accordingly, Plaintiff's Counts IV and V must be dismissed.

### 6. **Plaintiff's Complaint Fails To State A Valid Claim For Statutory "Blacklisting."**

A.R.S. §23-1362(A) provides that "[a] person commits blacklisting if he knowingly exchanges, solicits or gives out any labor blacklist."  A.R.S. §23-1361(A) defines a "blacklist" as "any understanding or agreement whereby the names of any person or persons, list of names, descriptions or other means of identification shall be spoken, written, printed or implied for the purpose of being communicated or transmitted between two or more employers of labor, or their bosses, foremen, superintendents,

managers, officers or other agents, whereby the laborer is prevented or prohibited from engaging in a useful occupation."

Plaintiff does not allege any facts showing any understanding or agreement between the City of Prescott Defendants and any other employer that Plaintiff Riley would be prevented or prohibited from engaging in a useful occupation. Merely alleging that she is experiencing a difficult time obtaining substitute employment is insufficient to support such an agreement or understanding. [*See,* Complaint, Dkt. 1, paragraph 137]. Because Plaintiff fails to allege sufficient facts to support a statutory "blacklisting" claim, Count VI of the Complaint must be dismissed.

### 7. Plaintiff's Complaint Fails To State A Valid Claim For Intentional Infliction Of Emotional Distress.

Plaintiff's Count VII is for an alleged claim of intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires that one engage in "extreme and outrageous" conduct directed at a person known to be particularly susceptible to emotional distress. *See, Ford v. Revlon,* 153 Ariz. 38, 734 P.2d 580 (1987)*; Lucchesi v. Stimmell,* 149 Ariz. 76, 716 P.2d 1013 (1986); *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc*., 183 Ariz. 550, 905 P.2d 486 (App. 1995); Restatement (Second) Torts §46, comment (d) (1965). The tort of intentional infliction of emotional distress has three elements: first, the defendant's conduct must be extreme and outrageous; second, the defendant must either intend or recklessly disregard the near certainty that emotional distress will result from the conduct; and third, the conduct must actually cause severe emotional distress. *Ford,* 153 Ariz. at 43, 734 P.2d at 585 (1987). Whether the

conduct is "extreme and outrageous" enough to state a claim of relief is a question for the court. *Cluff v. Farmers Ins. Exchange,* 10 Ariz. App. 560, 460 P.2d 666, 668 (1969). The standard for "extreme and outrageous" conduct is high: it must be "beyond all possible bounds of decency" and "atrocious and utterly intolerable in a civilized community." *Id.; see also,* Restatement (Second) Torts §46, cmt. d (1965); *see also, Ford v. Revlon, supra*.

By way of example, a school administrator alleged that her employer intentionally inflicted emotional distress by not properly renewing her contract under A.R.S. §15-503, reducing her compensation during the term of her contract, slandering and ridiculing her, unfairly singling her out for discipline on performance grounds, and threatening her with termination. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 909 P.2d 486, 494-95 (Ariz. App.1995). Such conduct was found not "extreme and outrageous" enough to support the administrator's claim. *Id.* Additionally, in *Mintz, supra.,* the court granted a motion to dismiss where the employer hand-delivered a letter to an employee that was in the hospital for emotional issues relating to her employment, letting the plaintiff know that she had been reassigned. The Court upheld the trial court's holding that the situation was not outrageous enough to support a claim for intentional infliction of emotional distress, even though *Mintz* was particularly susceptible to emotional distress. One of the reasons the early dismissal decision was upheld in *Mintz* was the Court's recognition that a trial court must act as a "gatekeeper" in determining whether the alleged actions were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized community." *Id. citing Cluff v. Farmers Ins. Exchange,* 10 Ariz. App. 560, 562, 460 P.2d 666, 669 (1969). Moreover, the *Mintz* Court provided that situations in the business world - such as the employment context – "rarely" arise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.

In this case, there are no allegations of conduct that are sufficiently outrageous to support Plaintiff's claim. The well-pled conduct upon which Plaintiff rests her claim against Defendants consists of hearsay statements that the City of Prescott Defendants "objected" to Plaintiff's behavior and a conclusory "upon information" allegation that the City of Prescott Defendants allegedly threatened the YHS contract. [Complaint, Dkt 1, paragraphs 37, 41, 57, and 75]. Defendants are unaware of any precedent establishing that any of the conduct complained of by this Plaintiff is sufficiently "extreme and outrageous" to support the claim. Because the conduct complained of here is not extreme and outrageous so as to support a claim for intentional infliction of emotional distress, the claim should be dismissed. *See, e.g., Loos v. Lowe's HIW, Inc.,* 2011 WL 2457508 (D.Ariz. 2011).

### IV.   CONCLUSION.

For all of the foregoing reasons, Defendants City of Prescott, Mayor Marlin Kuykendall, and his wife, Tana Kuykendall, respectfully request this Court dismiss all claims as to them.

…

17

DATED this 15th day of August, 2011.

JELLISON LAW OFFICES, PLLC


By s/ James M. Jellison
James M. Jellison
Jellison Law Offices, PLLC
3101 North Central Avenue
Suite 1090
Phoenix, AZ 85012
*Attorney for Defendants City of Prescott,
Mayor Marlin Kuykendall, and Tana Kuykendall*

I hereby certify that on 15th day of August, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Susan Martin
Daniel Bonnett
Jennifer Kroll
Mark A. Bracken
Martin & Bonnett, PLLC
1850 North Central Avenue, Suite 2010
Phoenix, AZ 85004

Daniel Pochoda
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014

*Attorneys for Plaintiff*

I hereby certify that on August 15, 2011, I served the attached document by U.S. Mail on the following:

The Honorable James A. Teilborg
U.S. District Court, U.S. Courthouse,
Suite 523
401 W. Washington Street
SPC 51
Phoenix, Arizona  85003-2154


s/Kasey M. Rivera

18