1

**SUSAN MARTIN (AZ # 014226)**
**DANIEL BONNETT (AZ # 014127)**
**JENNIFER KROLL (AZ # 019859)**
**MARK A. BRACKEN (AZ # 026532)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mbracken@martinbonnett.com

**DANIEL POCHODA (AZ # 021979)**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KayAnne Riley, | CASE NO.: CV-2011-08123-JAT |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO CITY OF PRESCOTT DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| City of Prescott, Arizona, a political subdivision; Yavapai Humane Society, an Arizona non-profit corporation; Marlin Kuykendall, individually and in his official capacity as Mayor of the City of Prescott, and Tana Kuykendall, husband and wife; Steve Norwood, individually and in his official capacity as City Manager of the City of Prescott and Shelly Norwood, husband and wife; Ed Boks and Adele Langdon, husband and wife; Marty Goodman and Jane Doe Goodman, husband and wife, | |
| Defendants. | |

1

## **INTRODUCTION**

The First Amendment protects Plaintiff KayAnne Riley's right to speak out against official misconduct and other matters of public concern.  On November 1, 2010, she exercised her free speech and association rights as a private citizen to express opposition to the pattern of retaliatory acts of Mayor Kuykendall ("Mayor") and the City of Prescott ("City") against persons who criticize them, a matter of concern among Prescott residents. In response, the Mayor and City retaliated against Ms. Riley and caused her to be fired from her job with a City contractor, Defendant, Yavapai Humane Society ("YHS").  The Complaint states abundant facts showing this retaliation and violations of the First Amendment and state laws. There is no reason in law or fact to prematurely terminate this litigation.  The Court is respectfully requested to deny the Motion to Dismiss.

## **FACTS**

In July 2009, Ms. Riley was hired by YHS as Marketing Manager. (Complaint, Doc. 1, ¶13).  She was well qualified for the job and never received a negative performance review. (¶¶14, 60).  She was promoted to the position of Director of Marketing and Development. (¶13).  The City of Prescott contracted with YHS to provide animal shelter and animal control services. (¶¶16-18). Because stray animals represent a public health and safety risk, the City has statutory authority, under A.R.S. §§ 9-499.04 and 9-240(16), to control animals for the public's welfare. (¶¶18-19).  YHS uses a City building for its operations. (¶20).  The City can terminate the YHS contract without cause at any time. (¶22).

In October 2010, Ms. Riley helped organize "Prescott Citizens Against Bullies" ("PCAB").  The group planned to inform Prescott residents on matters of public concern, involving the pattern of retaliatory acts and abuse of power by City officials, including the Mayor. (¶¶27-31).  PCAB members publicly assembled and peaceably demonstrated to express their opinions. (¶28).  About October 26, 2010, Ms. Riley wrote a press release about a planned demonstration at the Prescott City Hall to protest the firing and arrest of

former City employee Dawn Castenada. (¶32).  Ms. Riley advised Defendant Boks, her boss, that this would be done on her own time. (¶34).

Boks told Ms. Riley that he had been contacted by Defendant Goodman, a PCAB Board member, about the planned demonstration. (¶36).  Goodman said that he had been contacted by the Mayor who objected to the planned demonstration and Ms. Riley's involvement. (¶37).  Ms. Riley told Boks that she would only participate on her own time and using personal resources. (¶38).   About October 28, 2010, Defendant Goodman visited the YHS office to discuss Ms. Riley's participation in the PCAB and planned demonstration. (¶40).  Boks reported to Ms. Riley that Goodman was concerned about her participation in the demonstration, that this "was affecting his friendship with the Mayor," and "the Mayor and the entire City Council felt that this is a YHS issue." (¶41). Defendant Boks then told Ms. Riley that as a result of her association with PCAB and the planned demonstration against the City officials she was being placed on unpaid administrative leave.  Boks said that this action was taken to appease the Mayor. (¶42).

On October 29, 2010, the Mayor held a press conference to answer questions raised about the intimidation and arrest of Dawn Castaneda. (¶46). On November 1, 2010, while on leave, Ms. Riley participated in the lunch hour demonstration at the City Hall. (¶46). She spoke out against the Defendant Mayor's mistreatment of Ms. Castaneda as well as other threats and bullying from City officials. (¶49).   At all times, Ms. Riley's participation with PCAB, including this public demonstration, was on her own time as a private citizen and involved matters of public concern. (¶¶27-31, 34, 38).

On November 2, 2011, the Prescott Daily Courier reported the demonstration including the participation of Ms. Riley. (¶50).  Later that day, Defendant Boks called Ms. Riley and told her the administrative leave was now extended "indefinitely." (¶53).  After the call, the YHS Board of Directors met and discussed Ms. Riley's involvement, the Mayor's opinions about this, and the YHS contract with the City. (¶56).   Boks and Goodman told the Board that the Mayor had threatened to end the YHS contract with the

City because of Ms. Riley's involvement with PCAB and the demonstration against him. (¶57). Shortly thereafter, Boks and the YHS Board terminated Ms. Riley. (¶58).

On November 3, 2010, Ms. Riley received an official Notice of Reprimand for her participation in the demonstration that said she had disregarded Bok's directive not to implicate YHS in her "personal activities involving former City of Prescott employee Dawn Castaneda." (¶¶59, 61).  She responded to correct the inaccurate allegations in the Notice and clarified that she had not involved the YHS. (¶62).

About November 4, 2010, Ms. Riley reported back to work. (¶63).  Boks told her she needed to admit that her participation in the demonstration caused damage to YHS. (¶67).    After Ms. Riley refused, Boks told her she would remain indefinitely on administrative leave.  (¶68).  On November 12, 2010, Ms. Riley received a letter of termination from YHS. (¶71).  The letter included false statements about her and her involvement in the public protests. (¶72).

Defendants Kuykendall and City of Prescott have a history and pattern of retaliatory acts against public employees and other Prescott citizens who criticize them or other City officials.  Examples of this pattern include retaliatory actions taken against Noel Breen and Deborah Thurston for criticizing the Mayor and City. (¶¶76, 144). Defendants' retaliatory actions against Ms. Riley and others have chilled Ms. Riley from exercising her rights of speech and association, and she has avoided further public comment.  (¶87).

## LEGAL STANDARD

In ruling on this motion, the Court must construe Plaintiff's allegations in the light most favorable to the Plaintiff, taking all factual allegations in the Complaint to be true and drawing all reasonable inferences in favor of the Plaintiff.  *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, __F.3d__, 2011 WL 3524129, at *2 (9th Cir. Aug. 12, 2011). While she has done so here, the Plaintiff was not required to plead "detailed factual allegations" to state her claims.  *See*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not

necessary; the statement need only give the defendant fair notice of what … the claim is and the grounds upon which it rests.") (internal citations omitted).  The Plaintiff needs only set forth enough facts to state claims for relief that are facially plausible.  *See, Johnson v. Riverside Healthcare Sys., LP*, 534 F.32 1116, 1123 (9th Cir. 2008).  "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id*. (citation omitted).  "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove that claim. *Twombly*, 550 U.S. at 556.

In this circuit, a 12(b)(6) motion is "viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 2000) (citation omitted).  A 12(b)(6) dismissal is proper only in "extraordinary" cases.  *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

### ARGUMENT

Defendants have not met their burden of demonstrating that Plaintiff's claims are implausible. *See, Twombly*, 550 U.S. at 556.  Defendants simply ignored most of the specific and well-pled allegations in the Complaint, and the few allegations discussed in Defendants' brief are not taken as true, as required.  Defendants' indignant, self-serving rhetoric does not compensate for their insufficient argument.

**I.      First Amendment (Count I).**

**A.          Plaintiff Has Alleged Sufficient Facts To Establish a Plausible Claim.**

Assessing the sufficiency of Plaintiff's inference of plausibility requires consideration of the Complaint as a whole and review of all allegations.  *See, Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  In this circuit, facts and inferences are examined in relation to each other and a "holistic" review of the entire Complaint must be undertaken.  *Siracusano v. Matrix Initiatives, Inc.,* 585 F.3d 1167, 1182 (9th Cir. 2009), *aff'd*., 131 S.Ct. 1309 (March 22, 2011).  Defendants do not attempt this review and fail to provide needed information to the Court.  Recitation of the facts

"can be done quite briefly," (Defs. Brief at 5), only when most of the allegations in the Complaint are omitted as Defendants have done.

The Complaint and the above Facts section include many relevant allegations that Defendants fail to include despite their burden and responsibility to the Court.   For example, Defendants omit mention that Ms. Riley was well qualified for her job at YHS, that she performed well and that she was promoted to Director of Marketing and Development. (Complaint, ¶¶13, 14, 60).   These allegations support the inference of Defendants' retaliatory motive because they rebut two of the most common defenses to claims of adverse employment actions – inadequate qualifications and poor performance. *See*, *Int'l. Bd. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (1977) (elimination of alleged legitimate reasons for adverse action creates an inference that the decision was unlawful).

This inference is strengthened by other facts in the Complaint, which Defendants omit, that must be taken as true.  Defendants Kuykendall and the City have a history of retaliating against public employees and Prescott citizens for exercising their First Amendment rights to protest officials' abuse, and Defendant Kuykendall has engaged in a pattern of bullying and retaliation against persons who criticize him. (Complaint, ¶¶76, 144).  Prior bad acts are probative in assessing the likelihood that similar actions were taken again. *See*, *Starr v. Baca*, __F.3d__, 2011 WL 477094, at *13-14 (9th Cir. 2011).

The PCAB was formed and the demonstration on November 1, 2010 was held, to protest the bullying tactics of the Mayor and City of Prescott against persons who have criticized them and their policies.  Defendant Kuykendall responded to Ms. Riley's vocal opposition by contacting Defendant Goodman, an YHS Board Member, to express his displeasure with Ms. Riley and threaten termination of YHS's contract with the City. Within a day of the protest, Ms. Riley was placed on leave; ten days later she was fired. The close temporal proximity between the protest and the adverse employment actions "is evidence of pretext."  *See*, *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732-33 (9th Cir. 1986).   The above allegations alone create a plausible inference that Plaintiff suffered adverse employment actions caused by Defendants Kuykendall and City of Prescott that

were "reasonably likely to deter" her from protected activities.  *See, Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

The numerous allegations in the Complaint cover specific events, persons, actions and statements.  They are non-conclusory and non-formulaic.  As can be seen in the above Facts section and review of the Complaint, they include, but are not limited to:  Ms. Riley was well-qualified and had performed her job well; Ms. Riley's involvement in the PCAB and the November 1, 2010 demonstration was as a private citizen and on her own time; the actions taken were peaceful and involved public concerns; Defendants could end the City contract with YHS at any time and for any reason; Defendant Kuykendall had a history and practice of retaliating against persons who criticize him; and Defendant Kuykendall contacted a YHS board member and made clear his displeasure with Ms. Riley's involvement in the protest and that this involvement put the YHS contract at risk.

The limited facts discussed in one paragraph in Defendants' brief (at 5-6) are disputed by Defendants and not taken as true as required by the Federal Rules. Defendants erroneously seek to apply an evidentiary standard at the pleading stage in the attempt to exclude hearsay allegations and allegations "on information."  *See, e.g., Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512 (2002) (noting that the pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims").

The Federal Rules of Civil Procedure "provide for notice pleading, not fact pleading, and *Iqbal* and *Twombly* did not rewrite the rules."  *Lewis v. Taylor,* 2010 WL 3785109, at *3 (S.D. Ohio 2010).  The admissibility of particular fact conclusions "is best resolved on a full record at the summary judgment stage."  *DLC Dermacare LLC v. Castillo, R.N.*, 2010 WL 5148073, at * 5 (D. Ariz. 2010).  Hearsay allegations are proper in a Complaint even if not yet admissible.  *See, Fonseca v. Sysco Food Services of Ariz., Inc.,* 374 F.3d 840, 846 (9th Cir. 2004) (declarations that contain hearsay are admissible for summary judgment purposes because they could be presented in admissible form at trial).  A plaintiff may rely on discovery and should not be subjected to an "evidentiary

inquiry" at the motion to dismiss stage. *Twombly*, 550 U.S. 544 at 556, 570. Thus, in the instant context, arguably inadmissible hearsay at this point may be found allowable at a later stage under one of the many exceptions to hearsay (including admissions of a party opponent under Federal Rule of Evidence 801(d)(2), such as statements by Defendants Boks, Goodman and Kuykendall).

Defendants insist that allegations "on information" are exceptions to the rule and should not be taken as true on that basis alone. (Defs. Brief at 7-8). Defendants disingenuously argue that the phrase "upon information" is used by lawyers and judges as code for: "I do not know if this is an actual fact or not," and is "lawyer speak" for facts their counsel "hope exist." (Defs. Brief at 7).

Plaintiff uses "information" allegations in her Complaint as permitted by the Federal Rules. *See* Miller & Kane, Federal Practice & Procedure (3d ed.), FPP § 1224 (noting that Rule 11 and Rule 8 contemplate allegations made upon "information and belief" and permitting these allegations is "a practical necessity"). Rule 11(b) contemplates use "of information and belief" allegations in a pleading. *Id.* The Committee Notes to the 1993 Amendments explain that the Rule allows "factual contentions in initial pleadings … made on 'information and belief' because sometimes a litigant may have good reason to believe a fact is true or false but may need discovery … to gather and confirm the evidentiary basis for the allegation." Fed.R.Civ.P. 11 (1993 Advisory Committee Notes). Doing so does not make these allegations less plausible. Such pleading is particularly useful when, as in the instant context, the information is not presumptively in the knowledge of the pleading party. *Brocade Commc'ns Sys., Inc.*, *v. A10 Networks, Inc.*, 2011 WL 1044899, at *6 (N.D. Cal. 2011); *see, also, Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard… does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.").

///

1    None of the cases cited by Defendants prohibit the use of "information"
2  allegations.  (*See* Defs. Brief at 7-8).  In each case, the court took the "information"
3  allegations as true and analyzed their weight and sufficiency based on the content.
4  Defendants' loose representation of the import of these decisions is underlined by their
5  portrayal of the holding, in *Sinaltrainal,* as the court finding that the allegations on
6  information and belief were insufficient to "nudge [plaintiffs'] claims across the line from
7  conceivable to plausible." (*See* Defs. Brief at 7-8).  The actual holding was "… plaintiffs'
8  attenuated chain of conspiracy fails to nudge their claims across the line from conceivable
9  to plausible."  *Sinaltrainal v. Coca-Cola,* 587 F.3d 1252, 1268 (10th Cir. 2009).

10    In addition to the insufficient factual presentation, Defendants do not discuss
11  applicable court decisions.  It is well established that the "First Amendment shields a
12  public employee if he speaks as a citizen on a matter of public concern."  *Huppert v. City*
13  *of Pittsburgh*, 574 F.3d 696, 702 (9th Cir. 2009).  Defendants Mayor and City of Prescott
14  retaliated against Ms. Riley in response to her exercising rights of speech and association
15  because:  (1) she spoke on a matter of public concern; (2) she spoke as a private citizen;
16  (3) her speech and association were a substantial or motivating factor for the adverse
17  employment decisions taken because of the acts and/or directions of Defendants Mayor
18  and City of Prescott; (4) these Defendants do not have justification for treating her
19  differently from others in the general public, and (5) the Defendants would not have taken
20  the above actions absent the protected speech and association.  *See*, *Anthoine v. N. Cent.*
21  *Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) (citing *Eng v. Cooley*, 552 F.3d
22  1062, 1070 (9th Cir. 2009).  Defendants did not meet their burden of showing that Ms.
23  Riley's allegations did not raise an inference of plausibility on these elements.

**B.    Defendant Kuykendall is Not Entitled to Qualified Immunity**.

25    Defendant Kuykendall seeks qualified immunity on the constitutional claim. (Defs.
26  Brief at 9-10).   Kuykendall does not claim that the right involved was not clearly
27  established, nor could he in light of prior court decisions, including *Huppert,* 574 F.3d at
28  702, in this circuit.  Further, the Ninth Circuit, quoting the U.S. Supreme Court, has

stated: "First Amendment protection does not depend on whether the governmental action is direct or indirect.  Where the government may not prohibit certain speech, it also may not threaten to exert economic pressure on a private employer to 'produce a result which [it] could not command directly'." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011) (quoting, *Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (alteration in original) and *Speiser v. Randall,* 357 U.S. 513, 526 (1958)).  Plaintiffs' affiliation with the PCAB and involvement in a public demonstration are clearly established forms of speech protected by the First Amendment.  *See, e.g., Giebel v. Sylvester*, 244 F.3d 1182, 1189-90 (9th Cir. 2001); *Edwards v. South Carolina*, 372 U.S. 229, 235-36 (1963).

Defendant Kuykendall's claim for immunity boils down to:  "I did not do it."  Plaintiff has pled facts stating otherwise.  Kuykendall will have full opportunity to demonstrate the accuracy of his claim as will Plaintiff, and discovery is the first step in resolving disputes of fact.  At this point, Ms. Riley's allegations about Defendant Kuykendall's retaliatory actions and direct involvement are taken as true.  *See, Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).  The Mayor is not entitled to qualified immunity.

## C.     The  City of Prescott is a Proper Defendant.

Governmental bodies such as the City are liable for the unconstitutional actions of "municipal policymakers."  *See, Pembaur v. Cincinnati,* 475 U.S. 469, 480 (1986).  The allegations in the Complaint are taken as true for purposes of Defendants' motion. Ms. Riley has raised the plausible inference that the violations of her protected rights of speech and association were caused by Defendant Kuykendall, the Prescott Mayor and final decision maker for Prescott on the relevant policies and operations. (Complaint, ¶8).

Additionally, the Complaint alleges that Defendants Mayor and City of Prescott have a history and pattern of retaliating against Prescott residents and employees who use protected speech to criticize them; their targets included Noel Breen and Deborah Thurston. (Complaint, ¶76).  Pursuant to this municipal history and pattern, Defendant Mayor Kuykendall illegally caused the suspension and the firing of Ms. Riley shortly after

1   and in retaliation for her public criticism of him and the City.  Defendant City of Prescott
2   is liable for the unconstitutional actions of the Mayor taken pursuant to the
3   unconstitutional City policy and practice of retaliating against critical speakers.  *See, e.g.,*
4   *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985).

5   **II.     Wrongful Termination (Count II).**

6          Plaintiff has alleged sufficient facts to support her claim that she was wrongfully
7   terminated in violation of public policy, under A.R.S. § 23-1501, for exercising her rights
8   under the First Amendment and Article 2, Sections 5 and 6 of the Arizona Constitution.
9   (*See* Complaint, ¶¶100-109.)  Contrary to Defendants' claims, the clear and unequivocal
10  language of the Arizona Employment Protection Act (AEPA), A.R.S. § 23-1501(3)(c)(i)
11  "provides a remedy if the employee is terminated in retaliation for refusing to commit an
12  act or omission '***that would violate the Constitution of Arizona or the statutes of this***
13  ***state***.'"   *Galati v. America West Airlines, Inc.*, 69 P.3d 1011, 1013-14 (Ariz. Ct. App.
14  2003) (emphasis added in original) (quoting A.R.S. § 23-1501(3)(c)(i)).  "The legislature's
15  stated intent in enacting § 23-1501 was to limit the circumstances in which a terminated
16  employee can sue an employer to those situations involving either qualifying written
17  contracts or an employer violating the public policy of the state as enunciated ***in the state***
18  ***constitution*** and statutes."  *Taylor v. Graham County Chamber of Commerce*, 33 P.3d
19  518, 527-28 (Ariz. Ct. App. 2001) (emphasis added) (quoting *Johnson v. Hispanic*
20  *Broadcasters of Tucson, Inc.*, 2 P.3d 687, 689 (Ariz. Ct. App. 2000)).

21          Defendants also argue that they are not liable under A.R.S. § 23-1501 because
22  they are not "employers."  Although the "term 'employer' is not defined in the statute,"
23  Arizona Courts have construed "employer" broadly to include others, such as supervisors
24  and other agents of the employer.  *See Higgins v. Assmann Electronics, Inc.*, 173 P.3d
25  453, 457 (Ariz. Ct. App. 2007); *see also Logan v. Forever Living Prods. Int'l, Inc.,* 52
26  P.3d 760, 763 (Ariz. 2002) (applying AEPA to agents of the employer).  Defendant relies
27  upon a federal case defining the scope of "employer" liability under Title VII.  (Defs
28  Brief, p. 11.)  The Arizona Court of Appeals has previously found that cases defining

"employer" under Title VII are not applicable under the AEPA and are distinguishable because the "AEPA does not contain limiting provisions similar to those in… Title VII which are intended to protect small businesses." 173 P.3d at 457-58.

Thus, although this appears to be an issue of first impression, Arizona courts would likely extend application of the AEPA to the City of Prescott Defendants, under the facts of this case. As alleged in the Complaint, the YHS operated from a City owned building, performed one of the City's governmental functions, submitted regular reports to the City, received funding from the City, and made employment decisions based upon pressure from the City. (Complaint, ¶¶15-26, 56-58). Because the City and its officials exercised power and authority over the operations of the YHS, the YHS operated like a City agency and the Prescott Defendants are "employers" under the AEPA. *See, e.g., Clairmont v. Sound Mental Health,* 632 F.3d 1091, 1101-02 (9th Cir. 2011) (finding that a domestic violence counselor employed by a private company that operated under a contract with the court would be treated as a public employee for purpose of § 1983 claim for violation of First Amendment rights). Whether Plaintiff is an "employer" of the City under the circumstance here will require a factual inquiry that is not appropriate for resolution in a motion to dismiss. Nevertheless, even if it is later found that any of the Defendants are not "employers" under the AEPA, these Defendants are, in the alternative, liable for tortious interference with an employment relationship. *See*, Count III, *infra*.

**III.     Tortious Interference with Employment Relationship (Count III).**

"[T]he Arizona Supreme Court has held that an employee can bring an intentional interference with employment claim against a supervisor for maliciously causing the plaintiff to be terminated." *Tempesta v. Motorola, Inc.*, 92 F.Supp.2d 973, 987 (D.Ariz. 1999) (citing *Wagenseller v. Scottsdale Memorial Hosp.,* 710 P.2d 1025, 1043 (Ariz. 1985). Arizona courts have also held that "when an individual supervisor/defendant was acting within the scope of authority as a management representative, he or she was, in effect, the employer, and could not interfere with his or her own contract." *Higgins*, 173 P.3d at 457 (citations omitted). Thus, pursuant to Fed.R.Civ.P. 8(d)(2), Plaintiff's claim

1    for tortious interference is pled in the alternative or in so far as any of the Defendants are

2    found to be acting in their individual rather than official capacity or not as an employer.

3        The elements of a claim for intentional interference are:  "(1) the existence of a

4    valid contractual relationship or business expectancy; (2) knowledge of the relationship or

5    expectancy on the part of the interferer; (3) intentional interference causing a breach or

6    termination of the relationship or expectancy; and (4) resultant damage to the party whose

7    relationship or expectancy has been disrupted."  *Tempesta*, 92 F.Supp.2d at 988 n. 17

8    (citing *Wagenseller*, 710 P.2d at 1041).  Defendants do not challenge that Plaintiff has

9    alleged facts to support these four elements of the claim and only challenge whether

10   Defendants' actions were improper. (*See* Defs. Brief at 12-13).

11       Contrary to Defendants' assertions, Plaintiff has alleged that Defendants acted

12   illegally and abused their power and authority.  Defendants again conveniently ignore the

13   majority of the facts alleged in the Complaint.  As previously noted, Defendants violated

14   Plaintiff's right to freedom of speech and abused their authority to intimidate and bully

15   citizens, such as Ms. Riley, for exercising their rights guaranteed under the First

16   Amendment and Arizona Constitution. (Complaint, ¶¶ 53-99).  Defendants have also

17   made false, defamatory and/or misleading statements that have damaged Plaintiff's

18   reputation in the community and limited her ability to secure future employment.  (*Id.*

19   ¶¶115-118, 138).  Based upon these allegations, Defendants have improperly interfered

20   with Plaintiff's employment and prospective employment contracts.

21   **IV.    Defamation and False Light Invasion of Privacy (Counts IV & V).**

22       Defendants again conveniently ignore the well-pled allegations in the Complaint

23   and falsely contend that the Complaint "does not contain a single allegation that the City

24   of Prescott Defendants published any material concerning Plaintiff that was either false, or

25   which placed her in a false light before the public on a matter highly offensive to a

26   reasonable person." (*See* Defs. Brief, at 14).  However, Plaintiff alleged that Defendants

27   made false and defamatory statements "to the YHS Board of Directors, YHS employees,

28   members of the Prescott community, and or potential employers that labeled Plaintiff as

untrustworthy, disloyal, difficult, radical, incorrigible, unruly, hostile, insubordinate, rebellious, challenging, and/or disruptive." (Complaint, ¶¶122, 125, & 115-119). Plaintiff further alleged that these false and defamatory statements damaged Plaintiff's reputation in the community, caused her to lose her job at the YHS, hurt her ability to find future employment, and caused mental and emotional damages.  (*Id*. at ¶¶118-119 & 127).

## V.   Statutory Black-Listing (Count VI).

Defendants again misrepresent and ignore the relevant facts alleged in the Complaint.  Plaintiff has not merely alleged that "she is experiencing a difficult time obtaining substitute employment."  (*See* Defs. Brief, at 15).   Plaintiff alleged that "Defendants made false, defamatory and/or misleading statements to prospective employers that prevented Plaintiff from securing a position comparable to the position that she held at the YHS or any employment position." (Complaint, ¶¶138 & 115-118). Plaintiff further alleged that "Defendant Kuykendall has engaged in a pattern or practice of bullying, harassing, and/or retaliating against Prescott citizens that criticize him or other City officials." (*Id*. ¶76).   Moreover, Plaintiff alleged that she was denied multiple employment opportunities in or around Prescott, despite her qualifications. (*Id*.  ¶¶117-118 & 137).  Plaintiff, who is also an eight year veteran of military service, provided one example in her Notice of Claim where she was offered a position for which she was qualified at the Northern Arizona VA Health Care System in Prescott, but her offer was suddenly and inexplicably rescinded after she had accepted the offer. (*Id*.  ¶5 (referencing Notice of Claim), Doc. 11, Exhibit A at p. 10).

Although Plaintiff may not yet have all the facts and evidence relevant to her claim because the information is within the possession and control of the Defendants or other third parties, at this time Plaintiff has pled facts that allow the court to draw the reasonable inference that the Defendants black-listed Ms. Riley.  *See Arista Records, LLC*, 604 F.3d at 120; *Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## VI.    Intentional Infliction of Emotional Distress (Count VII).

Although Defendants argue the burden of proof to establish an intentional infliction of emotional distress ("IIED") claim is demanding, it is premature to dismiss Plaintiff's claim without an opportunity to conduct discovery and show that Defendants' actions were extreme and outrageous as Plaintiff has alleged.  Although a termination decision alone is generally insufficient to directly raise an IIED claim, Plaintiff also has alleged facts other than just her termination to establish her intentional infliction of emotional distress claim.  *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 905 P.2d 559, 562-64 (Ariz. Ct. App. 1995).   Plaintiff has alleged that Defendants' intentionally bullied, harassed, retaliated against, abused their power and authority, and violated Ms. Riley's First Amendment Rights, and has alleged that Defendants' conduct was extreme and outrageous. (Complaint, ¶¶76-78, 86-90, 92, 97, & 140).  Plaintiff should be permitted an opportunity to show that Defendants' pattern of bullying and harassing conduct is extreme and outrageous and the negative impact on Plaintiff continues to be severe. The issue regarding the sufficiency of Plaintiff's claims should be resolved at summary judgment or trial. *See, e.g., Stack v. Perez*, 248 F.Supp.2d 106, 110 (D. Conn. 2003) (finding that where reasonable minds would differ, regarding whether alleged conduct was extreme and outrageous, this issue was for the jury).

## VII.   Conclusion

The City of Prescott Defendants' interest in telling the Court that the allegations against these Defendants are "scant," (Defs. Brief at 6), apparently led to their failure to include many relevant and well-pled facts that must be accepted as true for the purpose of evaluating their Motion to Dismiss.  A careful and full reading of Plaintiff's Complaint shows that Plaintiff has pled sufficient facts to establish the plausibility of each of her claims.   Therefore, for the reasons discussed above the City of Prescott Defendants' Motion to Dismiss should be denied.

In so far as the Court may find the pleadings insufficient on any of Plaintiff's claims, Plaintiff should be granted leave to amend, pursuant to Fed.R.C.P. 15(a).

1     Dated this 1st day of September, 2011.

2                                          MARTIN & BONNETT, P.L.L.C.

3

4                                  By: s/Mark Bracken
                                       Daniel L. Bonnett
5                                      Susan Martin
                                       Jennifer L. Kroll
6                                      Mark Bracken
                                       1850 N. Central Avenue, Suite 2010
7                                      Phoenix, AZ 85004
8                                      (602) 240-6900

9
                                            -and-
10

11                                     Daniel J.  Pochoda
                                       ACLU FOUNDATION OF ARIZONA
12                                     3707 North 7th Street, Suite 235
                                       Phoenix, Arizona 85014
13                                      (602) 650-1854

14                                     Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2       I HEREBY CERTIFY THAT ON September, 1 2011, I electronically filed the

3   foregoing with the Clerk of the Court for the United States District Court for the District

4   of Arizona by using the CM/ECF System for filing.

5       I certify that all participants in the case are registered CM/ECF users and that

6   service will be accomplished by the court CM/ECF system and/or via e-mail.

7

8   James M. Jellison, Esq.
    Jellison Law Offices, PLLC
9   3101 North Central Avenue, Suite 1090
    Phoenix, AZ  85012

10  Charles Anthony Shaw, Esq.
    Charles Anthony Shawl Law Offices
11  140 N. Granite Street
    Prescott, AZ  86301

12

13  s/Kathy Pasley
    Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28