**LAW OFFICES OF
CHARLES ANTHONY SHAW, PLLC**
140 NORTH GRANITE STREET
PRESCOTT, ARIZONA   86301
TELEPHONE:  (928) 778-0801
EMAIL tony@cashawlaw.com

Charles Anthony Shaw, #003624

**ERIC S. CHESTER (AZ #011825)**
448 SOUTH MONTEZUMA STREET
PRESCOTT, ARIZONA 86303
TELEPHONE:  (928) 776-1425
EMAIL chesterlaw@juno.com

Attorney for Defendants Yavapai Humane Society, Ed Boks Adele Langdon, and Marty Goodman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| KayAnne Riley, | No. CV 11-08123-JAT |
| Plaintiff, | **YAVAPAI HUMANE SOCIETY DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| City of Prescott, Arizona, a political subdivision; Yavapai Humane Society, an Arizona non-profit corporation; Marlin Kuykendall, individually and in his official capacity as mayor of the City of Prescott, and Tana Kuykendall, husband and wife; Steve Norwood, individually and in his official capacity as City Manager of the City of Prescott and Shelly Norwood, husband and wife; Ed Boks and Adele Langdon, husband and wife; Marty Goodman and Jane Doe Goodman, husband and wife, | |
| Defendants. | |

Pursuant to Rule12(b)(6), Fed. R. Civ. P., Defendants Yavapai Humane Society ("YHS"), Ed Boks, Adele Langdon, and Marty Goodman (collectively "YHS Defendants"), through undersigned counsel, submit their Motion to Dismiss all Counts of Plaintiff's Complaint as to them.  The facts alleged in the Complaint are insufficient as a matter of law

to support any of the causes of action pled against the YHS Defendants. This Motion is supported by the annexed Memorandum of Points & Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Standard of Review.**

This Court has set forth the following standard of review on Rule 12(b)(6) motions to dismiss, a standard recited almost verbatim by City Defendants in their motion to dismiss:

> "To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a 'short and plain statement of the claim showing that the pleader is entitled to relief,' so that the defendant has 'fair notice of what the ...claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).
>
> Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Twombly,* 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) 'requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.' *Id.* (Citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)).
>
> Rule 8's pleading standard demands more than 'an unadorned, the-defendant unlawfully-harmed-me accusation.' *Ashcroft v. Iqbal,* __U.S.__, __, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly,* 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is 'plausible on its face.' *Iqbal,* 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal 'probability,' but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* 'Where a complaint pleads facts that are' merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' *Id.* (citing *Twombly,* 550 U.S. at 557).
>
> In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. U.S.,* 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286 (1986)."

1  *Barnes v. City of Phoenix,* 2009 WL 3425785, pps. 1-2 (D. Ariz. 2009).

**II.     The Complaint Fails to allege Sufficient Facts to sustain the 42 U.S.C. § 1983 Claim against the YHS Defendants, and this Claim Should be Dismissed.**

It has been repeatedly held that a Complaint fails to state a claim under 42 U.S.C. §1983 for violation of First Amendment rights for acts of a private entity.  See, e.g., *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982*); George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229-30 (9th Cir. 1996). "The First Amendment protects individuals only against government, not private, infringements upon free speech rights." *George,* 91 F.3d at 1229, citing *Rendell-Baker,* 457 U.S. at 837-38.  42 U.S.C. § 1983, which protects against actions under color of state law, does not protect private conduct, no matter how discriminatory or wrong. *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982). "Individuals bringing actions against private parties for infringement of their constitutional rights, ... must show that the private parties' infringement somehow constitutes state action." *George, id.,* citing *Dworkin v. Hustler Magazine,* 867 F.2d 1188, 1200 (9th Cir. 1989). Plaintiff therefore must plead facts in the Complaint that her firing by YHS Defendants constituted state action. *Gorenc v. Salt River Project Agricultural & Power Dist.,* 869 F.2d 503, 505 (9th Cir. 1989); *see also Lugar,* 457 U.S. at 937.

In order for private conduct to constitute state action, "something more" must be present. *Lugar,* 457 U.S. at 939.  The Supreme Court has described four different tests to consider when deciding whether the "something more" for state action exists: (1) the public function test, (2) the state compulsion test, (3) the nexus test, and (4) the joint action test. *Id*. Here, Plaintiff fails to allege sufficient facts to establish State action by the YHS Defendants under any theory.  Plaintiff alleges YHS is an Arizona private non-profit corporation which has an independent contractor status with the City of Prescott under an Agreement whereby it provides animal control services for the City and uses a City-owned building for its operations.  (Complaint, ¶¶ 8, 16, 18-23). Plaintiff next alleges that YHS terminated her employment because the City threatened to cancel or not renew the Agreement due to

Plaintiff's vocal opposition to the City regarding public issues not related to YHS. (Complaint, ¶¶ 57, 58, 75). Plaintiff alleges other adverse actions against her by the YHS Defendants in order to appease the Mayor of the City. (Complaint, ¶ 42) Plaintiff further claims that the City and its Mayor have a history and pattern of retaliatory acts against other folks who criticize them. (Complaint, ¶¶ 76, 144). These allegations fail to establish state action under any of the above tests that could create liability against any YHS Defendant.

### A. The Public Function Test does not establish State Action by the YHS Defendants.

The fact that YHS provides animal shelter and control services under a contract with the City does not make it a State entity so that it could be liable for the alleged constitutional violations related to YHS's employment decisions under the "public function" test. *See Rendall-Baker,* 457 U.S. at 842. This service of providing animal shelter and control is not "traditionally the *exclusive* prerogative of the State" and therefore YHS is not deemed a state actor under the "public function" test. *Rendall-Baker, id.* (a private school which is almost wholly state-funded and teaches students mostly referred by the State does not perform a "public function" so that its acts constitute state action).

Plaintiff's attempt to categorize YHS as a State actor, or claim that Plaintiff is a "public employee" of YHS solely due to YHS's independent contract with the City to provide animal shelter and control services under a "public function" argument, fails as a matter of law. Plaintiff's references to A.R.S. §§9-499.04 and 9.240(B)(16) are of no avail. The former only states that a city "may by ordinance provide for ... animal control officers"; it does not make any such action mandatory. The latter only states "the common counsel shall also have power ... to prohibit the roaming at large of animals ... [and] to authorize the impounding ... thereof"; it does not make such regulation mandatory. Nor do these laws make animal control the "exclusive" function of the City, and no authority exists that animal control is "traditionally the *exclusive* prerogative of the City.

In addition, even if a private entity is performing a "public function," the critical

4

question is whether the specific act complained of falls within that "public function." "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Caviness v. Horizon Community Learning Center, Inc.,* 590 F.3d 806, 812-813 (9th Cir. 2010). The relevant inquiry as to the YHS Defendants is whether YHS's role as an employer was state action. *See George,* 91 F.3d at 1230 (while the defendant private prison may be deemed a State actor under the "public function" theory for some purposes, it was not deemed so for purposes of disciplining or terminating its employees because such acts were not part of its "public function" under the County contract). *George* held that employment decisions involved the defendant's "day-to-day management," and "the day-to-day management of private contractors performing government functions does not generally constitute state action." *Id.* at 1231, citing *Blum*, 457 U.S. at 1011-12.

Here, Plaintiff does not allege that any term in the YHS Agreement with the City gives the City any control over YHS's employment decisions. Therefore, YHS's decision to terminate Plaintiff was not a State action as a matter of law. Plaintiff's conclusory "naked assertion" claim that Defendants Kuykendall and/or Norwood "exercised supervisory authority over YHS . . . , by virtue of the YHS's contract with the City" regarding YHS's employment or personnel matters (Complaint, ¶¶ 9-10], is wholly unsupported by any factual allegation and should be ignored as "implausible" for purposes of Rules 8(a)(2) and 12(b)(6). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness,* 590 F.3d at 812.

**B.     The Government Nexus Test does not establish State Action by the YHS Defendants.**

Under the "nexus test" the question is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so the action of the latter may be fairly treated as that of the State itself." *Gorenc*, 869 F.2d at 506 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). As such, it is similar in many ways to the "public function" test. Plaintiff alleges no facts whereby the City regulated YHS's

5

employment personnel matters. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. at 352-53 (a heavily-regulated private electric utility company with a partial monopoly was not a state actor under a "nexus" theory when it shut off service for nonpayment).

Even if the allegations of the Complaint are accepted as true that (1) YHS performed animal control services under an Agreement with the City, (2) that YHS was required to submit regular reports to the City, and (3) that YHS operated on property owned by the City, such allegations are insufficient to show sufficient City regulation or control over YHS's employment decisions to make those decisions "State Action" under the "'nexus" theory.

### C. The Joint Action Test does not establish State Action by the YHS Defendants.

"Under the joint action approach, private actors can be state actors if they are willful participants in joint action with the state or its agents." *George,* 91 F.3d at 1231 (quoting *Dennis v. Sparks,* 449 U.S. 24, 27 (1980)); *see also Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152 (1970). The key word here is "**willful**." Plaintiff fails to allege any **willful** decision by YHS to jointly act with the City to punish or prevent her from exercising her rights. Instead, she merely claims there was a "conspiracy" to do so and that the City and its Mayor "threatened" to cancel its contract with YHS if YHS failed to take action against Plaintiff.

Plaintiff has alleged that the City and its Mayor **coerced** YHS into terminating Plaintiff's employment and **not** that YHS's termination of Ms. Riley was a voluntary **willful** act. Plaintiff alleges the City "threatened to cancel and/or not renew the City of Prescott's contract with the YHS"(Complaint, ¶¶ 57, 75), and that this was the reason YHS terminated her employment. Thus, Plaintiff alleges that YHS fired her for fear of losing its contract with the City, and **not** due to a willful agreement. This **lack** of willfulness by YHS is precisely why Plaintiff's "joint action" theory of "State Action" fails to state a claim against YHS. *See Helvey v. City of Maplewood,* 154 F.3d 841, 845 (8th Cir. 1998)(a private bar owner was not liable when he terminated a plaintiff employee, even though the plaintiff claimed she was fired because the City Manager threatened to close the bar if plaintiff was not fired). The

6

Court held that "[plaintiff] offered no evidence that [the private employer] willingly agreed with [the city manager] to enter into a conspiracy to retaliate against her." *Id.*

Plaintiff has clarified her Complaint allegations in her response to the motion to dismiss of the City of Prescott defendants. In this pleading Plaintiff claims:

(1) "Defendant Kuykendall responded to Ms. Riley's vocal opposition by contacting Defendant Goodman, an YHS Board Member, to express his displeasure with Ms. Riley and threaten termination of YHS's contract with the City, (and) within a day of the protest, Ms. Riley was placed on leave; ten days later she was fired." (Plaintiff's Response to City of Prescott Defendants' Motion to Dismiss, filed 09/01/2011 [hereinafter designated "Plaintiff's Response to COP MTD"], p. 6, lines 21-24);

(2) "(City of Prescott) Defendants could end the City contract with YHS at any time and for any reason; Defendant Kuykendall had a history and practice of retaliating against persons who criticize him, and Defendant Kuykendall contacted a YHS board member and made clear his displeasure with Ms. Riley's involvement in the protest and that this involvement put the YHS contract at risk." (Plaintiff's Response to COP MTD, p. 7, lines 8-12);

(3) YHS "made employment decisions based upon pressure from the City." (Plaintiff's Response to COP MTD, p. 12, lines 6-9)

These clarified allegations and the allegations of the Complaint, even taken as a whole, therefore allege that YHS Defendants were forced and threatened to make the decision which Plaintiff alleges violated her constitutional rights. Therefore, there can be no "willful" decision of YHS Defendants to violate Plaintiff's constitutional rights based upon Plaintiff's own allegations in her Complaint.

Regarding the allegation of conspiracy, "conspiracy actions under 42 U.S.C. §1983 must be supported by more than conclusory statements unsupported by specific facts; a mere conjecture that there has been a conspiracy is not enough to state a claim." 15 Am. Jur. 2d Civil Rights §80. *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206-07 (7th Cir. 1980) involved a claim of state action against a private party because the private party allegedly conspired with a public party and held the conspiracy allegations were insufficient to defeat a motion to dismiss for failure to state a claim. The Court held:

"It is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue

7

of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting such a "meeting of the minds."

*Id.* (quoting *Sparkman v. McFarlin,* 601 F.2d 261, 268 (7th Cir. 1979)).

In *Fonda v. L. Gray,* 707 F.2d 435 (9th Cir. 1983), the Court found that conclusory allegations of "conspiracy" without supporting facts cannot prove a "joint action" theory under §1983. "To prove a conspiracy between private parties and the government under §1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown". *Id.* at 438. The primary requirement of the "joint action" theory enunciated in every such opinion is that the plaintiff must allege sufficient facts to show the private party acted **willfully** and with **intent** to deprive the plaintiff of her constitutional rights. Plaintiff fails to allege any such facts in her Complaint, and as shown above, she has alleged the opposite.

### D. The Coercion Test does not establish State Action by the YHS Defendants.

Plaintiff's allegations that the YHS employment decision was based upon coercion of the City Defendants cannot constitute state action on the part of YHS under the "coercion test" because this test is used only to find *governments* liable for coercing private parties into taking allegedly unconstitutional action. It is not a vehicle for finding the private party liable when it is coerced by the government actor. Under the "coercion test,"

> "[A] **State** normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible..."

*Blum v. Yaretsky,* 457 U.S. at 1004-1005, citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164-65 (1978) (emphasis added); *see also Jackson v. Metropolitan Edison Co.,* 419 U.S. at 357; *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173 (1972); *Adickes v. S.S. Kress & Co.,* 398 U.S. 144, 170 (1970).

In none of the above cases, or any other case, has the Supreme Court ever concluded that a private party was liable for an act it performed due to government coercion. This theory is used to find the **State** (not a private actor) liable under §1983 when it coerces a

private actor through laws or edicts to act in violation of constitutional rights.  See, e.g., *Peterson v. City of Greenville,* 373 U.S. 244 (1963), wherein a city ordinance requiring racial segregation in restaurants was held to be "coercion."  This concept is the exact opposite of what Plaintiff asserts–that the YHS Defendants can be liable for involuntary acts forced upon them because of the City's threats.  While Plaintiff may state a claim against the City and its Mayor under this theory, she cannot state a claim against the YHS Defendants as private actors who were allegedly so compelled by the City.

In *Clairmont v. Sound Mental Health,* 632 F.3d 1091 (9th Cir. 2011), an opinion given great weight by Plaintiff, the issue was whether a **government** employee ("Wilson") could be held liable for coercing a private party contracting with the County to fire its private employee ("Clairmont") in retaliation for Clairmont's court testimony.  The Court held that Wilson could be liable to Clairmont under §1983 for threatening to stop referring clients to the private employer unless the employer fired Clairmont.  However, the Court **never** said that the private employer was also liable, or even alluded to this result.  Plaintiff's anticipated argument is a far-flung and fatal leap of logic that cannot be supported under *Clairmont*.

### E.      Conclusion.

Plaintiff's attempt to throw the YHS Defendants into the same corral of liability as the City of Prescott Defendants would create an untenable and patently inequitable situation for YHS and all other private government contractors.  If threatened with the loss of the government contract unless it fires an employee, the private employer is faced with only two equally miserable options:  either it refuses to fire the employee, thus losing its government contract and has to expend time and attorney's fees as a plaintiff in a federal lawsuit; or it fires the employee, thus keeping its contract, and has to expend time and attorney's fees as a defendant in a federal lawsuit.  Plaintiff's alleged "facts" at most show that the YHS Defendants were unwilling and unwitting pawns in a game initiated by the City. Plaintiff's claim against the YHS Defendants on Count I of the Complaint fails as a matter of law.

**III.    The Complaint Fails to allege Sufficient Facts to sustain the Wrongful Discharge**

**Claim against the YHS Defendants, and this Claim Should be Dismissed.**

In Count II of the Complaint Plaintiff claims that the YHS Defendants wrongfully discharged her under A.R.S. § 23-1501(3)(b) because the discharge allegedly violated the Arizona Constitutional provisions protecting the right of free speech and the right of petition and of assembly. (Complaint, ¶¶101-109). For all of the reasons set forth above, Count II of the Complaint fails to state a claim against YHS Defendants because they are private actors.

As with the Federal Constitution, the State Constitution applies only to restrict state action, **not** private conduct. *See, e.g., Niedner v. Salt River Project Agr. Imp. and Power Dist.,* 121 Ariz 331, 332, 590 P.2d 447, 448 (1979); *Bodett v. CoxCom, Inc.,* 366 F.3d 736, 748 (9th Cir 2004) (a private employer is not subject to the constitutional strictures applied to state actors by both the federal and Arizona state constitutions). Since the Complaint only alleges violations of the State Constitution to base its claim that the YHS Defendants are liable under A.R.S. §23-1501(3)(b), the Complaint fails to state a claim. The Arizona Supreme Court utilized some of the same tests of the United States Supreme Court to decide whether a private party's acts can constitute "state action." *Niedner,* 121 Ariz. at 333, 590 P.2d at 449. To the extent state law has not developed constitutional principles of state action of private parties, this Court may refer to federal constitutional law, discussed above, to decide the issue under state constitutional provisions, which, like the free speech and assembly provisions involved here, are similar to federal constitutional provisions. *See e.g. Acton v. Vernonia School Dist. 47J,* 23 F.3d 1514, 1518, 1520 (9th Cir. 1994).

Secondly, as the City of Prescott Defendants pointed out in their motion to dismiss, filed August 15, 2011, p. 11, lines 1-7, Plaintiff's allegation in her Complaint only bases the wrongful discharge claim on A.R.S. § 23-1501(3)(b). As such, the claim cannot survive the motion to dismiss here because that statute does not allow for wrongful discharge claims based on Arizona constitutional provisions. *Id*. Further, the plain meaning of the words used in A.R.S. §23-1501(3)(b) is that an employer is not liable under it unless it discharges an employee in a manner which violates the public policy of an Arizona **statute** to which it is

1  actually subject. *See Taylor v. Graham County Chamber of Commerce,* 201 Ariz 184, 191, 33 P.3d 518, 525 (App. 2001) (A.R.S. § 23-1501's "primary purpose was to circumscribe, not broaden, wrongful termination claims based upon alleged violations of public policy").

Plaintiff, in her response to the City Defendants' motion to dismiss, filed September 1, 2011, argues her wrongful discharge claim is actually based upon A.R.S. § 23-1501(3)(c)(i), which provides a remedy if an employee is discharged in retaliation for refusing to commit an act or omission that would violate the Constitution of Arizona. This response, however, is in error for two reasons: (1) Her Complaint no where alleges the wrongful discharge action is based upon A.R.S. § 23-1501(3)(c)(i); instead the Complaint bases the action solely on A.R.S. § 23-1501(3)(b). *See* Complaint, ¶ 101. (2) No where in the Complaint is it alleged that Plaintiff's discharge was "in retaliation for refusing to commit an act that would violate the Arizona Constitution's free speech or assembly provision."

Plaintiff claims she was discharged only for engaging in conduct protected by the constitutional provisions of free speech and assembly. She could have been able to state a claim under A.R.S. § 23-1501(3)(c)(i), for example, if she alleged that, as a managing employee of YHS, she refused to fire an employee under her supervision because that employee engaged in free speech. But the conduct she alleges simply does not fall within the language of A.R.S. § 23-1501(3)(c)(i), and under the authority of *Taylor*, *supra*, she cannot expand the meaning of the words of the statute to fit her situation. For these reasons, this claim should be dismissed against the YHS Defendants.

**IV.  The Complaint Fails to state a claim for Tortious Interference with Employment Relationship against the YHS Defendants, and this claim Should be Dismissed.**

Plaintiff alleges that individual YHS Defendant Marty Goodman tortiously interfered with Plaintiff's employment contract with YHS by knowingly inducing individual Defendant Ed Boks and the YHS Board to terminate Plaintiff's employment. (Complaint, ¶¶ 111-114). No other YHS Defendant is alleged liable for this aspect of this claim. Plaintiff also alleges: (1) that Goodman was a director/member of the YHS Board of Directors, who "exercised

11

direct and/or indirect supervisory authority over Plaintiff ... and Defendant Boks" involving "decisions regarding discipline and termination," and (2) that "Goodman was acting in both his individual and official capacities as an agent of the YHS." (Complaint, ¶ 12).

Plaintiff also alleges that all YHS Defendants are liable for tortiously interfering with Plaintiff's expectancy of employment after her termination by causing her not to be employed by multiple employers in or around Prescott, Arizona in positions for which she was qualified. (Complaint, ¶¶ 115-118). Plaintiff, however, has pled nothing specifically to allege that any YHS Defendant did anything to cause any employer not to hire Plaintiff. Both of these separate claims of tortious interference lack sufficient factual allegations to survive motion to dismiss.

### *A. The Claim Against Marty Goodman for Termination of Employment.*

Plaintiff concedes that "when an individual supervisor/defendant was acting within the scope of authority as a management representative, he or she was in effect, the employer, and could not interfere with his or her own contract." *See* Plaintiff's Response to COP MTD, p. 12, lines 25-28. Plaintiff's allegations about Goodman's status, from ¶ 12 of the Complaint, admit that Goodman was acting in his official capacity within the scope of his authority as a management representative of YHS and as "an agent of YHS." Even though Plaintiff alleged, without any plausible supporting facts, that Goodman could also have been acting in a "personal" capacity, the "personal" capacity allegation cannot save this claim from dismissal because Plaintiff also clearly alleges Goodman was acting as both "an agent of YHS" and as the director/member of the YHS Board who had supervisory managerial authority over both the Plaintiff and Defendant Boks regarding Plaintiff's discharge. Accordingly, Goodman was in effect the employer and cannot interfere with his own contract when he is acting within the managerial scope of his authority as an agent for YHS.

Second, Plaintiff fails to establish in the Complaint that Goodman's action in allegedly causing her termination was "improper," one of the necessary elements of this tort. *See Wagenseller v. Scottsdale Mem. Hosp.,* 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985). The

only argument Plaintiff makes in her response to the City Defendants Motion to Dismiss that her termination involved "improper" conduct is that the termination violated the Federal and State Constitutions because it contravened free speech and assembly rights. *See* Plaintiff's Response to COP MTD, p. 13, lines 11-16. If Mr. Goodman were a state actor for purposes of "State Action" regarding a constitutional violation, this argument might be meritorious since conduct that violates established public policy or statute could constitute "improper" conduct for this claim. *Wagenseller,* 147 Ariz. at 378-79, 710 P.2d at 1033-34, citing Restatement (Second) of Torts § 767, comment c. However, as argued above Mr. Goodman's conduct cannot be state action under either the United States or Arizona Constitutions.

Likewise, "a defendant properly may interfere intentionally with another's contract by appropriate means to protect an interest of the defendant." *Safeway Ins. Co.,Inc. v. Guerrero,* 210, Ariz 5, 11, 106 P.3d 1020, 1026 (2005), citing Restatement (Second) of Torts §733. Since no public policy or Constitutional provision prohibits Goodman from protecting the interests of YHS when he allegedly told Boks to fire Plaintiff so that YHS could keep its contract with the City, as Plaintiff alleges, Plaintiff has established nothing more than that Goodman legitimately sought to protect YHS's interest (and thus his own interest as YHS's agent). Under the *Safeway Ins. Co.* case and the other authorities mentioned above, Plaintiff fails to establish all the necessary elements of the tort and fails to state a claim.

**B.     The Claim against all YHS Defendants for Plaintiff's Alleged Failure To Obtain Other Employment**.

On this claim Plaintiff fails to allege that any YHS Defendant did anything specific to cause Plaintiff not to be employed by any particular employer after her termination. As such, this claim too should be dismissed because it is nothing more than "labels and mere legal conclusions" which does not raise the right to relief above the speculative level in violation of the *Iqbal/Twombly* cases. The allegations here are truly an "unadorned, the-defendant unlawfully-harmed-me accusation," which are "nothing more than naked assertions." As such, these allegations do not allow the court to draw the reasonable inference

that any YHS Defendant is liable for the misconduct alleged. This claim is therefore "implausible" within the meaning of *Iqbal/Twombly* and should be dismissed.

Moreover, *Dube v. Likens,* 216 Ariz 406, 414, 167 P.3d 93, 101 (App. 2007) is directly on point in holding that such vague allegations of the future business expectancy as alleged here fail to state a claim for relief. In *Dube* the Court held that tortious interference with a business expectancy "is only available in those situations where the plaintiff can identify the specific relationship with which the defendant interfered." *Id.* "'Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party.'" *Id.* (quoting *Schuler v. Abbott Labs,* 265 Ill.3d 991, 639 N.E.2d 144, 147 (1993)). Furthermore, even when the business expectancy is alleged to be with a group, such as a group of employers as alleged here, plaintiff must "specifically identify the group." *Id.,* citing *Hawaii Med. Ass'n v. Hawaii Med. Services Ass'n,* 113 Hawaii 77, 148 P.3d 1179, 1219-20 (2006).

Like Plaintiff here Mr. Dube claimed the defendant University officials interfered with his prospective business expectancy in obtaining jobs by slandering him to the prospective employers. *Dube,* 216 Ariz. at 414-16, 167 P.3d at 101-03. In a holding directly on point for the case at bench, the Arizona Court of Appeals found the allegations in the complaint were insufficient to withstand a motion to dismiss, stating:

> "Additionally, in his complaint he has not identified any specific employer with whom he sought employment and who was dissuaded from hiring him by acts for which the University Officials could be held responsible. Nor has he properly identified an employer of which the University Officials were aware."

*Dube,* 216 Ariz. at 414, 167 P.3d at 101. In addition, Mr. Dube, like Plaintiff here, alleged in his complaint he was unable to find employment even though he was qualified. The Court soundly rejected such allegations as insufficient in the following language:

> "This statement merely suggests that Dube had a "hope" of employment after graduation rather than an expectancy because he has not identified any prospective relationship. (Citation omitted) A claim for intentional interference with a business expectancy is not a substitute for a defamation claim. And even assuming Dube did have a business expectancy, he has not, as we stated above, alleged any facts supporting his statement that the University Officials knew of, and intentionally interfered with, that expectancy."

14

*Id.* Here, as in *Dube*, Plaintiff has not identified any specific employer with whom she sought employment and who was dissuaded from hiring her because of acts of the YHS Defendants. Nor has Plaintiff identified an employer of which the YHS Defendants were aware. Plaintiff merely suggests she had a "hope" of employment after termination, rather than an expectancy, because she has not identified any prospective relationship.[1] For the foregoing reasons this separate tortious interference claim should be dismissed as well.

**V.    The Complaint Fails to allege Sufficient Facts to sustain either the Defamation, the False Light Invasion of Privacy, or the Blacklisting Claims against the YHS Defendants, and these Claims Should be Dismissed.**

Plaintiff alleges that the YHS Defendants defamed her by false statements contained in a written notice of reprimand and a written notice of termination that was delivered to her by a YHS employee. (Complaint, ¶¶ 59, 61-62, 71-73, 123-124). As a matter of law those allegations do not state a claim for defamation because they are published to the party allegedly defamed and **not** to a third party. Restatement (Second) of Torts, § 577(1); *see also Morris v. Warner,* 160 Ariz. 55, 62, 770 P.2d 359, 366 (App. 1988)(publication for defamation purposes is communication to a third party); *Spratt v. Northern Automotive Corp.,* 958 F. Supp. 456, 465 (D. Ariz. 1996) (a statement published to the plaintiff cannot be slander).

Plaintiff also alleges the YHS Defendants published defamatory statements to the YHS Board of Directors and to other YHS employees. (Complaint, ¶ 125). These statements likewise do not state a claim for defamation as a matter of law due to the common interest privilege, which protects employers when discussing employment decisions because employees of an employer are "entitled to learn from ... (their) associates what is being done in a matter in which (they have) an interest in common." *Green Acres Trust v. London,* 141 Ariz. 609, 617, 688 P.2d 617, 625 (1984), citing Restatement (Second) of Torts, § 596, cmt. c; *see also Aspell v. American Contract Bridge League,* 122 Ariz. 399, 400-401, 595 P.2d

---

[1] In addition, the *Dube* court construed the *Twombly* federal standard regarding motions to dismiss and held the tortious interference with contract claim failed to meet that standard to survive a motion to dismiss. *Dube,* 216 Ariz. at 423-24, 167 P.3d at 110-111.

15

1  191, 192-93 (App. 1979)(as a matter of law, this privilege protects statements published by bridge club members about disciplining one of the members).

Plaintiff also alleges that defamatory statements, statements which placed Plaintiff in a false light, and statements which blacklisted her to employers to prevent her from being hired in subsequent employment, were published to the public, the Prescott Community, and potential employers. (Complaint, ¶¶ 125-126, 129-132, 135-138). However, nothing is alleged about what statements were published to the public or the Prescott Community or other employers, how they were published, what form the statements were (oral or in writing?), who the employers were, what understanding or agreement the YHS Defendants had with other employers to prevent Plaintiff from working, or which YHS individual(s) or party(ies) made the publications or entered into the understandings and agreements. As such these claims should be dismissed because they are devoid of facts and implausible under the *Iqbal/Twombly* standard as argued above in § IV(b). For the foregoing reasons, these claims (Counts IV, V, & VI of the Complaint) should be dismissed against the YHS Defendants.

**VI.   *The Complaint Fails to allege Sufficient Facts to sustain the Intentional Infliction of Emotional Distress ("IIED") Claim against the YHS Defendants.***

As the City Defendants argue in their motion to dismiss, the Court acts as the gate-keeper in determining whether the alleged actions of the YHS Defendants are "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" in order to properly state this claim. *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 553-55, 905 P.2d 486, 489-91(App. 1995). Moreover, *Mintz,* 183 Ariz. at 554, 905 P.2d at 490 holds that it is extremely rare to properly state this claim in the employment context in a complaint.

In *Ford v. Revlon, Inc.*, 153 Ariz. 38, 42-44, 734 P.2d 580, 584-86 (1987) the Court held that an employer's repeated failure to respond effectively for over a year's period of

16

time to a disgusting complaint of sexual harassment against a company supervisor warranted liability on the part of the employer for this tort. Here there are no allegations of repeated outrageous behavior over a long period of time. Moreover, the YHS Defendants would have had a legitimate business reason to terminate Plaintiff because of the alleged threat from the City Defendants that YHS would lose its contract with the City if they did not terminate her, even if the City Defendants' motive was to violate Plaintiff's rights of free speech and assembly. As argued above in Sections II, III, and IV, these actions of YHS are neither improper nor violative of law and would not provide the basis for separate claims against YHS. Thus, *Mintz* supports the denial of the IIED claim here because the Court found: (1) the failure to promote in *Mintz* was neither wrongful nor improper, and (2) the actions of the employer were not outrageous because they were for the legitimate purpose of getting the work done. *Mintz,* 183 Ariz.at 553-54, 556, 905 P.2d at 489-90, 492. Similarly, *Wallace v. Casa Grande School. Bd. of Gov.,* 184 Ariz. 419, 428, 909 P.2d 486, 495 (App. 1995) held that lawful employment decisions of non renewal of employment contract and reduction of salary, together with alleged defamatory comments by the employer that the plaintiff was not liked by anybody and that she "pisses people off" do not come close to the high standard of "outrageousness," necessary to support an IIED claim.

Here the allegations in the Complaint against the YHS Defendants show that YHS would have had legitimate business reasons for its actions, and the discharge was neither wrongful or improper. Also, the vague, implausible allegations of defamation against YHS are similar to the defamation allegations in the *Wallace* case. As such, insufficient facts are alleged to support this claim against the YHS Defendants, and it too should be dismissed.

*VII.    Conclusion.*

For the foregoing reasons, the YHS Defendant's motion to dismiss this case regarding all claims alleged against them should be granted forthwith.

RESPECTFULLY SUBMITTED this 12th day of September, 2011.

CHARLES ANTHONY SHAW, PLLC


By s/ Charles Anthony Shaw
Charles Anthony Shaw


s/     Eric S. Chester
Eric S. Chester

Attorneys for Defendants Yavapai Humane Society, Ed Boks, Adele Langdon, and Marty Goodman

I certify that on this 12th day of September, 2011, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Susan Martin
Daniel Bonnett
Jennifer Kroll
Mark A. Bracken
MARTIN & BONNETT, PLLC
1850 North Central Ave, Suite 2010
Phoenix, AZ 85004

Daniel Pochoda
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014

James M. Jellison, Esq.
JELLISON LAW OFFICES, PLLC
3101 North Central Ave. Suite 1090
Phoenix, AZ 85012

1  I further certify that on this 12th day of September, 2011, I mailed a copy of this document to the following:
2
3  HONORABLE JAMES A. TEILBORG
   United States District Court
4  Sandra Day O'Connor U.S. Courthouse, Suite 523
5  401 West Washington Street, SPC 51
   Phoenix, AZ 85003-2154
6
7  By s/ Kelly Levine
8       Kelly Levine
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27