**SUSAN MARTIN (AZ # 014226)**
**DANIEL BONNETT (AZ # 014127)**
**JENNIFER KROLL (AZ # 019859)**
**MARK A. BRACKEN (AZ # 026532)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mbracken@martinbonnett.com

**DANIEL POCHODA (AZ # 021979)**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| KayAnne Riley, | CASE NO.: CV-2011-08123-JAT |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT NORWOOD'S MOTION TO DISMISS** |
| vs. | |
| City of Prescott, Arizona, a political subdivision; Yavapai Humane Society, an Arizona non-profit corporation; Marlin Kuykendall, individually and in his official capacity as Mayor of the City of Prescott, and Tana Kuykendall, husband and wife; Steve Norwood, individually and in his official capacity as City Manager of the City of Prescott and Shelly Norwood, husband and wife; Ed Boks and Jane Doe Boks, husband and wife; Marty Goodman and Jane Doe Goodman, husband and wife, | |
| Defendants. | |

## INTRODUCTION

The First Amendment protects KayAnne Riley's right to speak out on matters of public concern including perceived official misconduct. On November 1, 2010, she exercised her free speech and association rights as a private citizen to express opposition to the pattern of retaliatory acts of Mayor Kuykendall ("Mayor"), the City of Prescott ("City") and City Manager Steve Norwood[1] against persons who criticize them. In response, the Mayor and City Manager retaliated against Ms. Riley and caused her to be fired from her job with a City contractor, Defendant, Yavapai Humane Society ("YHS"). The Complaint states numerous facts showing retaliation and violations of the First Amendment and state laws. There is no reason in law or fact to prematurely terminate this litigation. The Court is respectfully requested to deny the Defendant Norwood's Motion to Dismiss.[2]

## FACTS

In July 2009 Plaintiff Riley was hired by YHS as Marketing Manager. (Complaint, ¶13). She was well qualified for the job and never received a negative performance review. (*Id.* ¶¶14, 60). She was promoted to the position of Director of Marketing and Development. (*Id.* ¶13). The City of Prescott contracted with YHS to provide animal shelter and animal control services. (*Id.* ¶¶16-18). Because stray animals represent a public health and safety risk, the City has authority, under A.R.S. §§ 9-49.04 and 9-240(16), to control animals for the public's welfare. (*Id.* ¶¶18-19). YHS uses a City building for its operations. (*Id.* ¶20). The City can terminate the YHS contract without cause at any time. (*Id.* ¶22).

---

[1] Defendants correctly note that Shelly Norwood is named as a Defendant only to the extent of her involvement in the marital community. (*See* Complaint ¶ 10; Doc. 18 at p. 2, n. 1).

[2] Because Defendant Norwood's Motion to Dismiss is substantially similar to the City of Prescott Defendants' Motion to Dismiss (Doc. 6), the facts section and legal arguments in Plaintiff's Opposition to Defendant Norwood's Motion to Dismiss are similar to those made in Plaintiff's Opposition to City of Prescott Defendants' Motion to Dismiss (Doc. 12).

Defendant Norwood exercised supervisory power over the YHS. (*Id.* ¶10). Pursuant to the City of Prescott Charter, Article III, Section 3, as the City Manager Defendant Norwood is "the head of the administrative branch of the city government" and "responsible for the proper administration of all affairs of the city." (City of Prescott Charter found at: http://www.cityofprescott.net/_d/2010charter.pdf (Nov. 2010)).[3] To that end, he "shall have the power and be required to"… (2) See …that the provisions of all franchises, leases, contracts, permits and privileges granted by the city are observed;" and, when necessary: "(3) lay-off, suspend, transfer, demote, or remove all …employees of the city…". (*Id.*)

In October 2010 Ms. Riley helped organize "Prescott Citizens Against Bullies" ("PCAB"). The group planned to inform Prescott residents on matters of public concern involving the pattern of retaliatory acts by City officials including the City Manager, Defendant Norwood. (Complaint ¶¶27-31). PCAB members publicly assembled and peaceably demonstrated to do this. (*Id.* ¶28). About October 26, 2010, Ms. Riley wrote a press release about a planned demonstration at the Prescott City Hall to protest the firing and arrest of former City employee Dawn Castaneda. (*Id.* ¶32). Ms. Riley advised Defendant Boks, her boss, about this and that it was done on her own time. (*Id.* ¶34).

Mr. Boks told Ms. Riley that he had been contacted by Defendant Goodman, a PCAB Board member, about the planned demonstration. (*Id.* ¶36). Mr. Goodman said that he had been contacted by the Mayor who objected to the planned demonstration and Ms. Riley's involvement. (*Id.* ¶37). Ms. Riley told Mr. Boks that she would only participate on her own time and using personal resources. (*Id.* ¶38). About October 28, 2010, Defendant Goodman visited the YHS office to discuss Ms. Riley's participation in the PCAB and planned demonstration. (*Id.* ¶40). Mr. Boks reported to Ms. Riley that Mr.

---

[3] The Court may take judicial notice, pursuant to Fed.R.Evid. 201, of public records, "such as state statutes, city charters, and city ordinances," when considering a motion to dismiss. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) *cert. denied*, 434 U.S. 968 (1977); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006) (internal citations omitted) (noting that judicial notice may be taken of public records) .

Goodman was concerned about her participation in the demonstration, that this was "affecting his friendship with the Mayor," and "the Mayor and the entire City Council felt that this is a YHS issue." (*Id.* ¶41). Defendant Boks then told Ms. Riley that as a result of her association with PCAB and the planned demonstration against the City officials, she was being placed on unpaid administrative leave. (*Id.* ¶42). Mr. Boks said that this action was taken to appease the Mayor. (*Id.*).

On October 29, 2010, the Mayor held a press conference to answer questions raised about the intimidation and arrest of Dawn Castaneda. (*Id.* ¶45). On November 1, 2010, while on leave, Ms. Riley participated in the lunch hour demonstration at the City Hall. (*Id.* ¶46). She spoke out against Defendant Norwood's mistreatment of Ms. Castaneda as well as other threats and bullying from other City officials. (*Id.* ¶49). At all times, Ms. Riley's participation with PCAB, including this public demonstration, was on her own time as a private citizen and involved matters of public concern. (*Id.* ¶¶27-31, 34-38).

On November 2, 2011, the *Prescott Daily Courier* reported the demonstration including the participation of Ms. Riley. (*Id.* ¶50). Later that day, Defendant Boks called Ms. Riley and told her the administrative leave was now extended "indefinitely." (*Id.* ¶53). After the call, the YHS Board of Directors met and discussed Ms. Riley's involvement, the Mayor's opinions about her participation, and the YHS contract with the City. (*Id.* ¶56). Mr. Boks and Mr. Goodman told the Board that the Mayor had threatened to end the YHS contract with the City because of Ms. Riley's involvement with PCAB and the demonstration against him and other City officials, including Defendant Norwood. (*Id.* ¶57). Shortly thereafter, Boks and the YHS Board terminated Ms. Riley. (*Id.* ¶58).

On November 3, 2010, Ms. Riley received an official Notice of Reprimand for her participation in the demonstration that said she had disregarded Mr. Bok's directive not to implicate YHS in her "personal activities involving former City of Prescott employee Dawn Castaneda." (*Id.* ¶¶59, 61). She responded to correct the inaccurate allegations in the Notice and clarified that she had not involved the YHS. (*Id.* ¶62).

About November 4, 2010, Ms. Riley returned to work. (*Id.* ¶63). Boks told her she needed to admit that her participation in the demonstration caused damage to YHS. (*Id.* ¶67). After Ms. Riley refused, Mr. Boks told her she would remain indefinitely on paid administrative leave. (*Id.* ¶68). On November 12, 2010, Ms. Riley received a letter of termination from YHS. (*Id.* ¶71). The letter included false statements about her and her involvement in the public protests. (*Id.* ¶72). Plaintiff has alleged in her Complaint that Defendant Norwood participated in the decisions leading to the termination of Ms. Riley from YHS. (*Id.* ¶10).

The City of Prescott officials have a history and pattern of retaliatory acts against public employees and other Prescott citizens who criticize City officials. Examples of this pattern include retaliatory actions taken against Noel Breen and Deborah Thurston for criticizing City officials. (*Id.* ¶¶76, 144). Defendants' retaliatory actions against Ms. Riley and others have chilled Ms. Riley from exercising her rights of speech and association, and she has avoided further public comment. (*Id.* ¶87). The Complaint alleges that Defendant Norwood participated in the decision that adversely affected Ms. Riley's employment with YHS and thereby personally interfered with her right to speak on a matter of public concern. (*Id.* ¶98). At the time of the above events, Defendant Norwood was the City Manager with enforcement authority over City contracts and authority to lay-off, suspend or remove employees. *See,* City of Prescott Charter, Art. III, Sec. 6.

## **LEGAL STANDARD**

In ruling on this motion, the Court must construe Plaintiff's allegations in the light most favorable to the Plaintiff, taking all factual allegations in the Complaint to be true and drawing all reasonable inferences in favor of the Plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, __F.3d__, 2011 WL 3524129, at *2 (9th Cir. Aug. 12, 2011). While she has done so here, the Plaintiff was not required to plead "detailed factual allegations" to state her claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not

necessary; the statement need only give the defendant fair notice of what … the claim is and the grounds upon which it rests.") (internal citations omitted).  The Plaintiff needs only set forth enough facts to state claims for relief that are facially plausible.  *See, Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).  "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id*. (citation omitted).  "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.  *Twombly*, 550 U.S. at 556.

In this circuit, a 12(b)(6) motion to dismiss is "viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Develop. Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000) (citation omitted).  A 12(b)(6) dismissal is proper only in "extraordinary" cases.  *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## ARGUMENT

Defendants have not met their burden of demonstrating that Plaintiff's claims are implausible. *See, Twombly*, 550 U.S. at 556.  Defendants completely ignore most of the specific and well-pled allegations in the Complaint, and the few allegations discussed in Defendants' brief are not taken as true, as required.

**I. First Amendment (Count I).**

**A.  Plaintiff Has Alleged Sufficient Facts to Establish a Plausible Claim.**

Assessing the sufficiency of Plaintiff's inference of plausibility requires consideration of the Complaint as a whole and review of all allegations.  *See, Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  In this circuit, facts and inferences must be seen in relation to each other and a "holistic" review of the entire Complaint must be undertaken.  *Siracusano v. Matrix Initiatives, Inc.,* 585 F.3d 1167, 1182 (9th Cir. 2009), *aff'd.*, 131 S.Ct. 1309 (March 22, 2011).  Defendants do not even remotely acknowledge, let alone attempt this review, and have failed to provide relevant information to the Court.

The Complaint and the above Facts section include relevant allegations that Defendants fail to include despite their burden and responsibility to the Court. For example, Defendants omit mention that Ms. Riley was well qualified for her job at YHS, that she performed well and that she was promoted to Director of Marketing and Development. (Complaint, ¶¶ 13, 14, & 60). These allegations support the inference of Defendants' retaliatory motive because they rebut two of the most common defenses to claims of adverse employment actions – inadequate qualifications and poor performance. *See*, *Int'l. Bd. of Teamsters v. U.S.*, 431 U.S. 324, 358 n. 44 (1977) (elimination of alleged legitimate reasons for adverse action creates an inference that the decision was unlawful).

This inference is strengthened by other facts in the Complaint that must be taken as true. Prescott City officials have a history of retaliating against public employees and Prescott citizens for exercising their First Amendment rights. (Complaint, ¶¶76, 144). Prior bad acts are probative in assessing the likelihood that similar actions were taken again. *See*, *e.g.*, *Starr v. Baca*, __F.3d__, 2011 WL 477094, at *13-14 (9th Cir. 2011).

The PCAB was formed and the demonstration on November 1, 2010 was held, to protest the bullying tactics of the Mayor and City Manager Norwood against persons who have criticized them and their policies. Defendant Kuykendall responded to Ms. Riley's vocal opposition by contacting Defendant Goodman, a YHS Board Member, to express his displeasure with Ms. Riley and threaten termination of YHS's contact with the City. Within a day of announcing the public demonstration, Ms. Riley was placed on leave; ten days after the peaceful public demonstration she was fired. The close temporal proximity between the protest and the adverse employment actions "is evidence of pretext." *See*, *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732-33 (9th Cir. 1986). As the City Manager, Defendant Norwood had authority over City contracts and authority to suspend and remove employees. *See,* City of Prescott Charter, Art. III, Sec. 3.

The above allegations alone create a plausible inference that Plaintiff suffered adverse employment actions caused by Defendants Kuykendall, Norwood and the City of Prescott that were "reasonably likely to deter" her from protected activities. *See, Brooks*

*v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  The case should proceed against Defendant Norwood and the other municipal defendants.  These officials personally participated in decisions that adversely affected Ms. Riley's employment and interfered with her right to speak on matters of public concern. (Complaint, ¶¶ 10, 98, & 105).

### B. Defendant Norwood is Not Entitled to Qualified Immunity.

Defendant Norwood seeks qualified immunity on the constitutional claim.  (Doc. 18, at 7-8).  Norwood does not claim that the right involved was not clearly established nor can he in light of prior court decisions in this circuit, including *Huppert v. City of Pittsburg*, 574 F.3d 696, 702 (9th Cir. 2009).  Further, the Ninth Circuit, quoting the U.S. Supreme Court, has stated: "First Amendment protection does not depend on whether the governmental action is direct or indirect.  Where the government may not prohibit certain speech, it also may not threaten to exert economic pressure on a private employer to 'produce a result which [it] could not command directly'."  *Clairmont v. South Mental Health,* 632 F.3d 1091, 1100 (9th Cir. 2011) (quoting, *Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (alternation in original) and *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). Plaintiff's affiliation with the PCAB and involvement in a public demonstration are clearly established forms of speech protected by the First Amendment.  *See, e.g., Giebel v. Sylvester*, 244 F.3d 1182, 1189-90 (9th Cir. 2001) (finding distribution of handbills was a clearly established First Amendment right); *Edwards v. South Carolina,* 372 U.S. 229, 235-36 (1963) (finding peaceful assembly and demonstration is an exercise of "basic constitutional rights in their most pristine and classic form").

Contrary to Defendant Norwood's contention (Doc. 18 at 7), Plaintiff's Complaint alleges that Defendant Norwood was "acting in both his individual and official capacities as an agent of the City of Prescott."  (Complaint, ¶10).  Also contrary to Defendant Norwood's contention (Doc. 18 at 7-8), Plaintiff's Complaint alleges that Defendant Norwood violated Plaintiff's constitutional rights of association, free speech, and peaceful assembly.  (Complaint, ¶82.)  Ms. Riley's allegations that City of Prescott officials, including City Manager Norwood, retaliated against her for peacefully protesting their

actions and that City officials participated in decisions or discussions that lead to Plaintiff's termination are taken as true. *See*, *Ramirez v. City of Buena Park,* 560 F.32 1012, 1020 (9th Cir. 2009). Accordingly, Defendant Norwood is not entitled to qualified immunity.

## II.  Wrongful Termination (Count II).

Plaintiff has also alleged sufficient facts to support her claim that she was wrongfully terminated in violation of public policy, under the Arizona Employment Protection Act, A.R.S. § 23-1501 *et seq.* (AEPA), for exercising her rights under the First Amendment and Article 2, Sections 5 and 6 of the Arizona Constitution. (*See*, Complaint, ¶¶100-109; *see also, id.* at p. 2:2-3 (citing "A.R.S. § 23-1501 *et seq.*")). Defendants mistakenly attempt to limit the scope of Plaintiff's wrongful termination claim, under the AEPA. Although the Complaint quotes A.R.S. § 23-1501(3)(b), it is clear from the plain language of the Complaint that Plaintiff did not intend to limit her wrongful termination claim to only violations of a specific subsection of a state statute. (*See, id.*). Defendant Norwood does not explain nor cite any authority that supports his argument that Plaintiff's wrongful termination claim is limited to a particular subdivision of the AEPA. *See, e.g., Siracusano,* 585 F.3d at 1182 (facts and inferences must be seen in relation to each other and a "holistic" review of the entire Complaint must be undertaken).

The AEPA, A.R.S. § 23-1501(3)(c)(i), "provides a remedy if the employee is terminated in retaliation for refusing to commit an action or omission ***'that would violate the Constitution of Arizona or the statutes of this state.'***"  *Galati v. American West Airlines, Inc.*, 69 P.3d 1011, 1013-14 (Ariz. Ct. App. 2003) (emphasis added in original) (quoting A.R.S. § 23-1501(3)(c)(i)).  "The legislature's stated intent in enacting § 23-1501 was to limit the circumstances in which a terminated employee can sue an employer to those situations involving either qualifying written contacts or ***an employer violating the public policy of the state as enunciated in the state constitution*** and statutes." *Taylor v. Graham County Chamber of Commerce,* 33 P.3d 518, 527-28 (Ariz. Ct. App. 2001) (emphasis added) (quoting *Johnson v. Hispanic Broadcasters of Tucson, Inc.,* 2 P.3d 687,

689 (Ariz. Ct. App. 2000)).

Defendants also argue that Plaintiff has not alleged that Defendant Norwood has acted in such a way as to render him an "employer." (Doc. 18 at 9.) Defendants again ignore many of the allegations in the Complaint. Plaintiff has alleged that the YHS has an Animal Sheltering Service Agreement with the City of Prescott. (Complaint, ¶ 16). Under this Agreement, the City "is authorized to control stray animals under A.R.S. Sections 9-499.04 and 9-204(16)," and the City contracts its "animal shelter services in connection with the exercise of its animal control function." (*Id*. ¶19). YHS provides animal sheltering services for the City, operates from a City owned building, collects fees for the City, and provides monthly and annual reports to the City. (*Id.* ¶¶17-26). The YHS's services help protect "public health, safety, and welfare" and must be completed "to the satisfaction of the City," which may terminate the contract with or without cause. (*Id.* ¶18 & 22). Defendant Norwood was the City Manager with enforcement authority over City contracts and has authority to lay-off, suspend or remove employees. *See,* City of Prescott Charter, Art. III, Sec. 6. Plaintiff further alleged that Defendant Norwood participated in decisions and/or discussions that lead to Plaintiff's termination from the YHS. (Complaint, ¶10.) Thus, Plaintiff has alleged sufficient facts to establish that Defendant Norwood may be an "employer" within the meaning of the AEPA. *See, Higgins v. Assmann Electronics, Inc.,* 173 P.3d 453, 457 (Ariz. Ct. App. 2007) (finding supervisors may be "employers" within meaning of AEPA); *see also, Logan v. Forever Living Prods. Int'l, Inc.,* 52 P.3d 760, 763 (Ariz. 2002) (applying AEPA to agents of the employer).

Because the City and its officials, including Defendant Norwood, exercised power and authority over the operations of the YHS, the YHS operated like a City agency, and Defendant Norwood may be considered an "employer" under the AEPA. *See, e.g., Clairmont,* 62 F.3d at 1101-02 (finding that a domestic violence counselor employed by a private company that operated under a contract with the court would be treated as a public employee for purpose of § 1983 claim for violation of First Amendment rights). Whether

Defendant Norwood exercised sufficient control over the Plaintiff and YHS to establish Defendant Norwood is an "employer" will require a factual inquiry that cannot be resolved at this early stage of the litigation. Nevertheless, even if it is later found that Defendant Norwood did not exercise sufficient control over the Plaintiff or YHS to be considered an "employer" under the AEPA, Defendant Norwood is, in the alternative, liable for tortious interference with an employment relationship. *See*, Count III, *infra*.

**III. Tortious Interference with Employee Relationship (County III).**

"[T]he Arizona Supreme Court has held that an employee can bring an intentional interference with employment claim against a supervisor for maliciously causing the plaintiff to be terminated." *Tempesta v. Motorola, Inc.,* 92 F.Supp.2d 973, 987 (D. Ariz. 1999) (citing *Wagenseller v. Scottsdale Memorial Hosp.,* 710 P.2d 1025, 1043 (Ariz. 1985)). Arizona courts have also held that "when an individual supervisor/defendant was acting within the scope of authority as a management representative, he or she was, in effect, the employer, and could not interfere with his or her own contract." *Higgins,* 173 P.3d at 457 (citations omitted). Thus, pursuant to Fed.R.Civ.P. 8(d)(2), Plaintiff's claim for tortious interference is pled in the alternative or in so far as Defendant Norwood may be found to be acting in his individual rather than official capacity or not as an employer.

The elements of a claim for intentional interference are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Tempesta*, 92 F.Supp.2d at 988 n. 17 (citing *Wagenseller*, 710 P.2d at 1041). Contrary to Defendant Norwood's conclusory argument (Doc. 18 at 10-11), Plaintiff has alleged facts to support each of these elements of the tortious interference claim.

Plaintiff was employed as the Marketing and Development Director at the YHS and was terminated soon after she organized and participated in a peaceful public demonstration against City officials, including Defendant Norwood. (Complaint ¶¶ 13,

49, & 71-78). Defendants, including Mr. Norwood, knew that Plaintiff was employed by the YHS and intentionally interfered with Plaintiff's employment relationship. (*Id*. ¶¶ 111-115.) Defendants' actions also interfered with Plaintiff's expectancy in current and future employment in or around Prescott. (*Id*. ¶¶ 116-117). As previously noted, Defendants violated Plaintiff's right to freedom of speech and abused their authority to intimidate and bully citizens, such as Ms. Riley, for exercising their rights guaranteed under the First Amendment and Arizona Constitution. (*Id*. ¶¶53-99) *See also, Clairmont,* 632 F.3d at 1100 (the government "may not threaten to exert economic pressure on a private employer in order to produce a result that it could not command directly") (internal quotations omitted). Defendants have also made false, defamatory and/or misleading statements that have damaged Plaintiff's reputation in the community and limited her ability to secure future employment. (Complaint, ¶¶115-118, & 138). Based upon these allegations, Defendants have improperly interfered with Plaintiff's employment and prospective employment contracts.

**IV. Defamation and False Light Invasion of Privacy (Counts IV & V).**

Defendant Norwood, like the remaining City of Prescott Defendants, again conveniently ignores the well-pled allegations in the Complaint and falsely contends that the Complaint "does not contain a single allegation that the Norwoods published any material concerning Plaintiff that was either false, or which placed her in a false light before the public on a matter highly offensive to a reasonable person." (*See,* Doc. 18 at 12). However, Plaintiff alleged that Defendants, including Mr. Norwood, made false and defamatory statements "to the YHS Board of Directors, YHS employees, members of the Prescott community, and/or potential employers that labeled Plaintiff as untrustworthy, disloyal, difficult, radical, incorrigible, unruly, hostile, insubordinate, rebellious, challenging, and/or disruptive." (Complaint, ¶¶122, 125 & 115-119). Plaintiff further alleged that these false and defamatory statements damaged Plaintiff's reputation in the community, caused her to lose her job at YHS, hurt her ability to find future employment, and caused mental and emotional damages. (*Id.* at ¶¶118-119 & 127).

### V. Statutory Black-Listing (Count VI).

Defendant Norwood again misrepresents and ignores the relevant facts alleged in the Complaint. Plaintiff has not merely alleged that "she is experiencing a difficult time obtaining substitute employment." (*See,* Doc. 18 at 13). Plaintiff alleges that Defendants, including Mr. Norwood, "made false, defamatory and/or misleading statements to prospective employers that prevented Plaintiff from securing a position comparable to the position that she held at the YHS or any employment position." (Complaint, ¶¶138 & 115-118). Plaintiff further alleges that the City of Prescott and its officials have a pattern or practice of bullying, harassing, and/or retaliating against Prescott citizens that criticize City officials. (*Id.* ¶76). Moreover, Plaintiff alleges that she was denied multiple employment opportunities in or around Prescott, despite her qualifications. (*Id*. ¶¶117-118 & 137). Plaintiff, who is also an eight year veteran of military service, provided an example in her Notice of Claim where she was offered a position for which she was qualified at the Northern Arizona VA Health Care System in Prescott, but the offer was suddenly and inexplicably rescinded after she had accepted the offer. (*Id.* ¶5 (referencing Notice of Claim), Doc. 11, Exhibit A at p. 10).

Thus, Plaintiff has pled facts that allow the court to draw the reasonable inference that the Defendants, including Mr. Norwood, black-listed Ms. Riley, even though many of the facts and evidence relevant to her black-listing claim may be within the possession and control of the Defendants or other third parties. *See, Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (The *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant… or where the belief is based on factual information that makes the inference of culpability plausible…") (internal quotation omitted); *Iqbal,* 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

/ / /

## VI. Intentional Infliction of Emotional Distress (Count VII).

Although Defendant Norwoood argues the burden of proof to establish an intentional infliction of emotional distress ("IIED") claim is demanding, it is premature to dismiss Plaintiff's claim without an opportunity to conduct discovery and show that Defendants' actions were extreme and outrageous as Plaintiff has alleged. Although a termination decision alone is generally insufficient to directly raise an IIED claim, Plaintiff has alleged facts other than just her termination to establish her intentional infliction of emotional distress claim. *See, Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 905 P.2d 559, 562-64 (Ariz. Ct. App. 1995). Plaintiff has alleged that Defendants, including Mr. Norwood, were acting in concert with one another and intentionally bullied, harassed, retaliated against, abused their power and authority, and violated Ms. Riley's First Amendment Rights, and has further alleged that Defendants' conduct was extreme and outrageous. (Complaint, ¶¶76-78, 86-90, 92, 97 & 140). Plaintiff should be permitted an opportunity to show that Defendants' pattern of bullying and harassing conduct is extreme and outrageous and the negative impact on Plaintiff continues to be severe. The issue regarding the sufficiency of Plaintiff's claims should be resolved at summary judgment or trial. *See, e.g., Stack v. Perez,* 248 F.Supp.2d 106, 110 (D. Conn. 2003) (finding that where reasonable minds would differ, regarding whether alleged conduct was extreme and outrageous, this issue was for the jury).

## VII. Conclusion.

Defendant Norwood was the City Manager at all time relevant to Plaintiff's claims and as City Manager, he had enforcement authority over City contracts and authority to lay-off, suspend or remove employees. *See,* City of Prescott Charter, Art. III, Sec. 6. A careful and full reading of Plaintiff's Complaint shows that Plaintiff has pled sufficient facts to establish the plausibility of each of her claims. Therefore, for the reasons discussed above, Defendant Norwood's Motion to Dismiss should be denied.

///

///

In so far as the Court may find the pleadings insufficient on any of Plaintiff's claims against Defendant Norwood, Plaintiff should be granted leave to amend, pursuant to Fed.R.C.P. 15(a), and/or Defendant Norwood should be dismissed without prejudice.

Dated this 30th day of September, 2011.

MARTIN & BONNETT, P.L.L.C.

By: s/Mark Bracken
   Daniel L. Bonnett
   Susan Martin
   Jennifer L. Kroll
   Mark Bracken
   1850 N. Central Ave., Suite 2010
   Phoenix, AZ 85004
   (602) 240-6900

-and-

Daniel J. Pochoda
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Ste. 235
Phoenix, Arizona 85014
(602) 650-1854

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON September 30, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona by using the CM/ECF System for filing. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court CM/ECF system.

> James M. Jellison, Esq.
> Jellison Law Offices, PLLC
> 3101 North Central Avenue, Suite 1090
> Phoenix, AZ 85012
>
> Charles Anthony Shaw, Esq.
> Law Offices of Charles Anthony Shaw, PLLC
> 140 N. Granite Street
> Prescott, AZ 86301
>
> Mr. Eric C. Chester
> Attorney at Law
> 448 South Montezuma Street
> Prescott, AZ 86303

s/ Trudy Mahabir
Legal Assistant