1  WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Kay Anne Riley,                    )  No. CV 11-08123-PHX-JAT
                                      )
10              Plaintiff,            )  **ORDER**
                                      )
11  vs.                               )
                                      )
12                                    )
   City of Prescott, Arizona, a political)
13  subdivision;  Marlin  Kuykendall,)
   individually and in his official capacity as)
14  Mayor of the City of Prescott, and Tana)
   Kuykendall, husband and wife; Steve)
15  Norwood, individually and in his official)
   capacity as City Manager of the City of)
16  Prescott and Shelly Norwood, husband and)
   wife,                              )
17                                    )
              Defendants.             )
18                                    )
                                      )
19  _____ )

20        Pending before the Court are: (1) the City of Prescott Defendants' Motion to Dismiss

21  (Doc. 6)  and (2) the Norwood Defendants' Motion to Dismiss (Doc. 18).  Both Motions are

22  fully briefed and the Court has heard oral argument.  The Court now rules on the Motions.

23  **I.      BACKGROUND**

24        **A.      The Complaint**[1]

25

26  _____

27        [1]  In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the
   facts alleged in a complaint in the light most favorable to the drafter of the complaint, and
28  the Court must accept all well-pleaded factual allegations as true.  *Shwarz v. United States*,
   234 F.3d 428, 435 (9th Cir. 2000).  Accordingly, all facts set forth herein are as alleged by

Plaintiff was employed by Yavapai Humane Society[2] ("YHS") from July 2009 to November 2010.  (Doc. 1 at 5, ¶ 13).  Plaintiff was originally hired as the Marketing Manager for YHS and was later promoted to Marketing and Development Director.  (*Id.*). In October 2010, Plaintiff helped found a group called the Prescott Citizens Against Bullies ( "PCAB").  (*Id.* at 7, ¶ 27).  The purpose of PCAB was to speak out publicly and inform citizens on matters of public concern, including instances of unfair and unlawful actions by certain public officials and employees, including City of Prescott (the "City") officials. (*Id.*). The PCAB assembled to "peacefully demonstrate" on these matters and to publicly question a former City employee's termination and subsequent arrest.  (*Id.* at 7-8, ¶¶ 28-30).  The PCAB also publicly questioned the actions of Defendant Kuykendall, Prescott's Mayor ("Mayor Kuykendall"), and Defendant Norwood, Prescott's former City Manager ("City Manager Norwood").  (*Id.* at 8, ¶ 31).

On October 26, 2010, Plaintiff wrote and issued a press release, on behalf of PCAB, to the *Prescott Daily Courier* newspaper regarding a public demonstration that was to take place at City Hall.  (*Id.* at ¶ 32).  The following day, Plaintiff wrote her supervisor an email advising him of her participation in the demonstration and provided a link to the press release in the *Daily Courier*.  (*Id.* at 34).  Plaintiff's supervisor then called her and questioned her about her participation in the planned demonstration.  (*Id.* at ¶ 35).  Plaintiff's supervisor told her that Marty Goodman, a member of the YHS board, had contacted him about her participation in the demonstration and told him that Mayor Kuykendall objected to Plaintiff's involvement in the planned demonstration.  (*Id.* at 8-9 ¶¶ 36-37).  Plaintiff and her supervisor agreed that her participation in the demonstration would occur on her own time and without the use of YHS resources.  (*Id.* at 9, ¶ 39).

---

Plaintiff and will be accepted as true solely for the purpose of deciding the Motions to Dismiss currently before the Court.

[2]  In her Complaint, Plaintiff named Yavapai Humane Society, Ed Boks, Adele Langdon, and Marty Goodman as Defendants.  These Defendants have been dismissed by stipulation.  (*See* Doc. 32).

1    The next day, following a meeting with Marty Goodman, the board member,

2 Plaintiff's supervisor informed her that Mr. Goodman was upset about her participation in

3 the demonstration because it was affecting his friendship with Mayor Kuykendall. (*Id.* at 9,

4 ¶ 41). Plaintiff's supervisor then told her that she was being placed on unpaid administrative

5 leave for two days as a result of her association with PCAB and its demonstration. (*Id.* at ¶

6 42). Plaintiff's supervisor told her that he had to take action to appease Marty Goodman and

7 Mayor Kuykendall. (*Id.*). Plaintiff's supervisor later emailed her, informing her that her

8 administrative leave would be paid. (*Id.* at 10, ¶ 44).

9    Plaintiff then directed another member of PCAB to distribute a press release on behalf

10 of PCAB informing the public that, due to ongoing behind the scenes retaliation by the

11 Mayor, demonstrators should march in masks to avoid retaliation by the Mayor and the City

12 of Prescott. (*Id.* at ¶ 43). On November 1, 2010, between 11:30 a.m. and 1:00 p.m., Plaintiff

13 participated in the PCAB's public demonstration at Prescott City Hall. (*Id.* at 10, ¶ 46, 47).

14 At the demonstration, Plaintiff spoke out against Mayor Kuykendall and City Manager

15 Norwood, among others, focusing on the mistreatment and arrest of a former city employee.

16 (*Id.* at 49). The demonstration was covered in an article on the front page of the *Daily*

17 *Courier* the next day. (*Id.* at ¶ 50). In the article, Plaintiff was referred to as the "masked

18 leader of the protest rally" and was quoted as saying that some demonstrators were wearing

19 masks because "[e]verybody's afraid to speak up." (*Id.* at ¶ 50). Plaintiff's supervisor was

20 also identified and quoted in the story. (*Id.* at ¶ 51). The article referenced YHS and referred

21 to Defendants' alleged retaliatory actions against Plaintiff for her involvement in the PCAB

22 and her participation in the demonstration. (*Id.* at 10-11, ¶ 52). That same day, Plaintiff's

23 supervisor informed her that her administrative leave would be continued indefinitely. (*Id.*

24 at 11, ¶ 53).

25    YHS has an Animal Sheltering Service Agreement (the "Agreement") with the City

26 of Prescott (the "City"), wherein YHS has agreed to provide the City with animal sheltering

27 and animal control services. (*Id.* at 6, ¶ 17). The Agreement states that YHS is an

28 independent contractor of the City. (*Id.* at ¶ 18). Plaintiff alleges that the YHS Board was

1    informed that Mayor Kuykendall had either directly or indirectly threatened to cancel and/or

2    not renew the City's contract because of Plaintiff's involvement with PCAB and her

3    participation in the demonstration.  (*Id.* at 11, ¶ 57).

4         After the demonstration and the *Daily Courier* article, Plaintiff received an official

5    Notice of Reprimand from her supervisor regarding her participation in the demonstration.

6    (*Id.* at ¶ 59).  This Notice stated that she was being reprimanded for insubordination due to

7    her willful disregard of her supervisor's directives not to implicate YHS in her "personal

8    activities involving a former City of Prescott employee."  Prior to this reprimand, Plaintiff

9    had never received any negative performance reviews.  (*Id.* at ¶ 60).  Plaintiff initially

10   refused to sign the Notice because she felt it contained inaccurate and incomplete

11   information. (*Id.* at 12, ¶ 66).  Plaintiff was not given another opportunity to sign the Notice.

12   (*Id.* at 13, ¶ 69).  On November 12, 2010, Plaintiff received a Letter of Termination.  (*Id.* at

13   13, ¶ 71).  Since her termination, Plaintiff has applied for multiple vacant employment

14   positions in or around Prescott and was not selected, although she was qualified for these

15   positions.  (*Id.* at 19, ¶ 116).

16        Plaintiff alleges that based on the alleged facts above, Defendants City of Prescott,

17   Arizona, Marlin Kuykendall, Tana Kuykendall (the "Prescott Defendants") and Defendants

18   Steve Norwood and Shelly Norwood (the "Norwood Defendants"): (1) while acting in their

19   official and individual capacities, deprived Plaintiff of her First Amendment Rights to

20   Association, Free Speech, and Peaceful Assembly in violation of 42 U.S.C. section 1983

21   (Count I); (2) wrongfully terminated her, in violation of Arizona Revised Statutes section 23-

22   1501 and the Arizona Constitution (Count II); (3) tortiously interfered with her employment

23   relationship (Count III); (4) made defamatory statements about her that were false (Count

24   IV); (5) made false statements about her that represented her in a false light (Count V); (6)

25   black-listed her in violation of Arizona Revised Statutes section 23-1361 (Count VI); and (7)

26   subjected Plaintiff to emotional distress intentionally or disregarded the likelihood that their

27   actions would result in emotional distress (Count VII).

28

**B.    Defendants' Motions to Dismiss**[3]

The Prescott Defendants and the Norwood Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure embrace a notice-pleading standard. To survive a Rule 12(b)(6) motion, the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, although the Plaintiff need not provide "detailed factual allegations," the Plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.* at 1965.

---

[3] Although the Prescott Defendants and the Norwood Defendants have filed separate motions to dismiss, the majority of their arguments overlap. Accordingly, the Court will only distinguish between the Defendants' arguments if there is an argument that does not apply to all Defendants.

When analyzing a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *See Assoc. for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011).

## III.   ANALYSIS

Defendants argue that Plaintiff's Complaint should be dismissed because (1) each of Plaintiff's claims is unsupported by fact or law and (2) Defendants Mayor Kuykendall and Former City Manager Norwood are entitled to qualified immunity for alleged violations of 42 U.S.C. section 1983. The Court will now discuss each Count of Plaintiff's Complaint and Defendants' arguments supporting dismissal of each Count.

### A.   42 U.S.C. § 1983 ("Section 1983")

Plaintiff alleges that she is entitled to relief under Section 1983 because she was terminated from YHS in retaliation for her exercise of First Amendment rights.

Section 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

Defendants argue that Plaintiff's Section 1983 claims should be dismissed because Mayor Kuykendall and City Manager Norwood are entitled to qualified immunity on those claims.

### 1.   Qualified Immunity

A defendant in a Section 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step sequence for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light

most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Id.* If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To escape qualified immunity at the pleadings stage, a plaintiff need only plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, —— U.S. ——, ——, 131 S.Ct. 2074, 2080 (2011) (internal citation omitted).

### i.   Mayor Kuykendall

Plaintiff alleges that Mayor Kuykendall, in a conversation with Mr. Goodman, "threatened to cancel and/or not renew the City of Prescott's contract with the YHS because of [Plaintiff's] involvement with the PCAB and her participation in the public demonstration against him and other City officials." The Court finds that, taken in the light most favorable to Plaintiff, Mayor Kuykendall is not entitled to qualified immunity on this claim. Plaintiff's constitutional right to engage in free speech was clearly established when she was terminated from YHS. Further, assuming, as the Court must on a motion to dismiss, that Mayor Kuykendall threatened to cancel the City's contract with YHS if it did not fire Plaintiff because of Plaintiff's exercise of her free speech rights, these alleged facts are enough to state a claim that Mayor Kuykendall violated Plaintiff's constitutional right to engage in free speech free of governmental interference. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011) ("Where the government may not prohibit certain speech, it also may not threaten to exert economic pressure on a private employer in order to produce a result which [it] could not command directly.") (internal quotations and citations omitted). Accordingly, Mayor Kuykendall is not entitled to qualified immunity on Plaintiff's Section

1   1983 claim, and thus, the Prescott Defendants' Motion to Dismiss is denied with respect to

2   Count I.

3                          **ii.      City Manager Norwood**

4          Although Plaintiff alleges that City Manager Norwood retaliated against Plaintiff

5   because she protested his actions, Plaintiff fails to plead any facts showing how City

6   Manager Norwood was involved in the decision to terminate her employment.  Plaintiff does

7   not plead that City Manager Norwood made any specific statements, but simply alleges that

8   City Manager Norwood participated in decisions and/or discussions that led to Plaintiff's

9   termination from YHS.  Even if City Manager Norwood participated in "decisions and/or

10  discussions" that led to Plaintiff's termination, Plaintiff fails to plead any facts demonstrating

11  this participation or how such specific participation violated Plaintiff's constitutional rights.

12  All of Plaintiff's allegations against City Manager Norwood are conclusory and appear to be

13  based on speculation.  Accordingly, Plaintiff has failed to state a claim upon which relief can

14  be granted against City Manager Norwood for a Section 1983 violation and this claim will

15  be dismissed as to the Norwood Defendants.

16                     **B.      Wrongful Termination (Count II)**

17         Defendants argue that Plaintiffs have failed to state a claim for wrongful termination

18  under Arizona Revised Statutes Section 23-1501 because, by express language of the

19  statutes, wrongful termination claims are reserved only for claims by employees against their

20  employers.  Defendants argue that Plaintiff worked for the Yavapai Humane Society, not the

21  City of Prescott, the Mayor, or the City Manager.  In response, Plaintiff argues whether

22  Plaintiff was an employee of the City of Prescott is a factual question and should not be

23  determined on a motion to dismiss.  Plaintiff is correct that certain facts may raise a factual

24  question as to whether an individual is an employee or independent contractor.  However,

25  the ultimate application of the facts is a question of law.  *See Jaimes v. Indus. Comm'n of*

26  *Arizona*, 787 P.2d 1103, 1106 (Ariz. Ct. App. 1990).

27         "[E]ight criteria are used to determine whether an actor is an independent contractor

28  or an employee: (1) the extent of control over the work and the degree of supervision; (2) the

distinct nature of the worker's business; (3) the occupation's required specialization; (4) the provider of materials and the place of work; (5) the duration of employment; (6) the method of payment; (7) the relationship of work done to the regular business of the employer; and (8) the belief of the parties." *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189 -1192 (9th Cir. 2002) (citing *Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 142 (Ariz. 1990)).   "The fundamental criterion for determining whether an actor is a purely independent contractor is the extent of control the principal exercises or may exercise over the agent."   *Id*. at 1189 -1192 (internal citations omitted).

In this case, Plaintiff has failed to plead any facts to raise the inference that she was an employee of the City of Prescott.  Plaintiff does not dispute that Yavapai Humane Society was her employer.   Rather, she argues that YHS and the City of Prescott were her joint employers or alternatively, were separately her employers.  Plaintiff alleges that YHS was an independent contractor of the City of Prescott, but maintains that she was not only an employee of an independent contractor, but also somehow an employee of the City of Prescott.  Plaintiff alleges that YHS hired her and promoted her.  Plaintiff does not allege that Defendants were involved in those decisions.  Plaintiff does not allege that Defendants ever exercised any control over her or even had any direct contact with her in the scope of her employment duties.   Plaintiff argues that because YHS operated out of a City owned building, performed one of the City's government functions (providing animal sheltering and animal control services), and made employment decisions based on "pressure from the City," she has alleged enough facts to support her claim that she is an employee of the City.

To support her argument, Plaintiff cites *Clairmont v. Sound Mental Health*, 632 F.3d, 1091, 1101-1102 (9th Cir. 2011) and states that it holds that "a domestic violence counselor employed by a private company that operated under a contract with the court would be treated as a public employee for purpose of a § 1983 claim for violation of First Amendment Rights."   Plaintiff misstates the import of the holding of this case and the Court finds that *Clairmont* actually contradicts Plaintiff's argument that an employee of an independent contractor is also the employee of the agency that contracts with the independent contractor.

In *Clairmont*, Sound Mental Health ("SMH"), a private company that provided domestic violence perpetrator treatment to defendants charged with or convicted of domestic violence offenses, contracted with the Municipal Court to provide services to the general public and to Treatment Participants. 632 F.3d at 1098. Plaintiff, an employee of SMH, was fired after a Municipal Court employee complained to SMH about subpoenaed testimony Plaintiff gave during a revocation hearing. *Id.* at 1099. The Ninth Circuit Court of Appeals ("Court of Appeals") found that the relationship between an independent contractor, who provides services to the government, is analogous to the relationship between the government and its employees for the purposes of analyzing an independent contractor's free speech claims. *Id.* at 1101. The Court of Appeals reasoned that, under certain circumstances, the government has the same legitimate interest in regulating the speech of its independent contractors that it has in regulating the speech of its employees. *Id.*

In *Clairmont*, the Court of Appeals never even considered that Plaintiff was an employee of the Municipal Court. In fact, it specifically stated that Plaintiff "was not employed by the Municipal Court; he worked for SMH, a private company." *Id.* at 1102. Accordingly, Plaintiff has failed to cite any cases that support her argument that an employee of an independent contractor is also the employee of an agency with whom the independent contractor has a contract and this argument is actually contradicted by caselaw. *See id.*[4] Further, Plaintiff has not alleged any facts showing that the City of Prescott exercised the type of control over her or her employment that is necessary to establish that an employment relationship existed. Accordingly, Plaintiff has not alleged any facts supporting an inference

---

[4] *See also Southern Indiana Gas and Elec. Co. v. U.S.*, No. EV 77-33-C, 1978 WL 1277, at *4 (S.D. Ind. Dec. 22, 1978) ("A principal may only be said to be an employer and master of its agent, who would thereby become a servant-employee, when the principal retains the control necessary under the common law standards to establish the relationship of employer and employee. Furthermore, it follows then that since an independent contractor is not the servant-employee of its principal, as the general rule, the employees of an independent contractor are also not the servant-employees of the principal.") (internal citations omitted).

that the City of Prescott was her employer.  Because Plaintiff has failed to allege sufficient facts establishing that she was an employee of the City of Prescott, she cannot maintain a claim for wrongful termination against the City of Prescott, Mayor Kuykendall, or City Manager Norwood.  Accordingly, Count II of Plaintiff's Complaint for wrongful termination is dismissed as to all Defendants.

### C. Tortious Interference with Employment Relationship (Count III)

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted for tortious interference with employment relationship because Plaintiff has failed to allege facts supporting this claim.

"Tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another if the interference causes the plaintiff to lose a right under the contract." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (internal citations omitted).  "To plead a prima facie case of intentional interference with contract, the plaintiff must allege:  (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly."  *Id.* (internal quotations and citations omitted).

### 1. Mayor Kuykendall

Plaintiff has sufficiently alleged enough facts to state a claim for tortious interference with employment relationship against Mayor Kuykendall.  Plaintiff alleges that Mayor Kuykendall, in a conversation with Mr. Goodman, "threatened to cancel and/or not renew the City of Prescott's contract with the YHS because of [Plaintiff's] involvement with the PCAB and her participation in the public demonstration against him and other City officials."  Plaintiff alleges that this threat ultimately led to her termination from YHS.  Taking these facts as true, Plaintiff has sufficiently alleged a claim for tortious interference with employment relationship against Mayor Kuykendall and, thus, the Prescott Defendants'

1   Motion to Dismiss is denied with respect to Count III.

2                    **2.    City Manager Norwood**

3          Plaintiff has failed to allege any facts supporting her allegations that City Manager

4   Norwood tortiously interfered with her employment relationship.  Accordingly, the Court

5   finds that Plaintiff has failed to state a claim upon which relief can be granted for tortious

6   interference with her employment relationship by City Manager Norwood and Count III will

7   be dismissed as to the Norwood Defendants.

8              **D.    Defamation (Count IV) & False Light Invasion of Privacy**
                       **(Count V)**
9
10         Defendants argue that Plaintiff has failed to state a claim upon which relief can be

    granted with regard to her allegations supporting her claims for defamation and false light
11
    invasion of privacy because they are not supported by well-pled facts and are conclusory.
12
    In response, Plaintiff argues that her Complaint contains the well-pled allegations that
13
    Defendants made statements to the public, YHS Board of Directors, YHS employees,
14
    members of the Prescott community, and/or potential employers that labeled Plaintiff as
15
    untrustworthy, disloyal, difficult, radical, incorrigible, unruly, hostile, insubordinate,
16
    rebellious, challenging, and/or disruptive.
17
           "To be defamatory, a publication must be false and must bring the defamed person
18
    into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue,
19
    or reputation."  *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989).
20
           To recover for false light invasion of privacy, a plaintiff must allege facts showing a
21
    publication was unreasonably offensive and attributed false characteristics to plaintiff.  *Id.*
22
    Further, the publication "must involve a major misrepresentation of [the plaintiff's] character,
23
    history, activities or beliefs, not merely minor or unimportant inaccuracies."  *Id.* (internal
24
    quotations and citation omitted).
25
           While Plaintiff has technically pled enough facts to give fair notice of what her claims
26
    are, the Court finds that she has not adequately alleged the grounds for those claims as
27
    envisioned by *Twombly* and *Iqbal*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
28

("Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id.*  Here, the allegation that Defendants have published false information about Plaintiff appears to be speculation.  Plaintiff does not allege which Defendants published false information, specific statements made by those individual Defendants, or the individual parties to whom those statements were made.  Because Plaintiff has failed to allege at least some of this information to raise her allegations to something above speculation, the Court finds that Counts IV and V for Defamation and False Light Invasion of Privacy should be dismissed as to all Defendants.

### E.    Blacklisting (Count VI)

As with Plaintiff's claims for defamation and false light invasion of privacy, Plaintiff has failed to adequately plead the grounds of her claim for blacklisting.  "A person commits blacklisting if he knowingly exchanges, solicits or gives out any labor blacklist."  ARIZ. REV. STAT. § 23-1362.  A blacklist is

> any understanding or agreement whereby the names of any person or persons, list of names, descriptions or other means of identification shall be spoken, written, printed or implied for the purpose of being communicated or transmitted between two or more employers of labor, or their bosses, foremen, superintendents, managers, officers or other agents, whereby the laborer is prevented or prohibited from engaging in a useful occupation.

ARIZ. REV. STAT. § 23-1361(A).  Plaintiff alleges that Defendants made false, defamatory, and/or misleading statements to prospective employers that prevented Plaintiff from securing a position comparable to the position that she held at the YHS or any employment position.  She also alleges that she is having a difficult time obtaining substitute employment.  Again, the allegation that Defendants made false, defamatory and/or misleading statements to prospective employers appears to be speculation.  Plaintiff does not allege which Defendants

- 13 -

1    made those statements, specific statements made by those individual Defendants, or the

2    individual employers to whom those statements were made.  Because Plaintiff has failed to

3    allege at least some of this information to raise her allegations to something above

4    speculation, the Court finds that Count VI for Blacklisting should be dismissed as to all

5    Defendants.

6                   **F.      Intentional Infliction of Emotional Distress (Count VII)**

7         Defendants argue that Plaintiff has failed to state a claim upon which relief can be

8    granted for Count VII because Plaintiff has not pled conduct that is extreme or outrageous

9    to satisfy the elements required for such a claim.  In response, Plaintiff argues that

10   Defendants engaged in a pattern of bullying and harassing her and that pattern of bullying

11   and harassing conduct is extreme and outrageous.

12        The elements of a cause of action for intentional infliction of emotional distress are

13   (1) "the conduct by the defendant must be 'extreme' and 'outrageous;'" (2) "the defendant

14   must either intend to cause emotional distress or recklessly disregard the near certainty that

15   such distress will result from his conduct;" and (3) "severe emotional distress must indeed

16   occur as a result of defendant's conduct."  *Mintz v. Bell Atl. Sys. Leasing Int'l., Inc*., 905 P.2d

17   559, 562-563 (Ariz. Ct. App. 1995) (internal quotations and citations omitted).

18        Although Plaintiff claims that she has alleged a pattern of bullying and harassing

19   conduct by Defendants, Plaintiff must plead more than the conclusory statement that

20   Defendants engaged in a pattern of bullying and harassing conduct toward Plaintiff.  Plaintiff

21   must plead facts showing that Defendants engaged in a pattern of bullying and harassing

22   conduct.  Plaintiff alleges that City Manager Norwood "knowingly induced Mr. Boks and

23   the YHS Board to interfere with and terminate Plaintiff's employment at the YHS."

24   However, Plaintiff fails to plead any facts supporting this allegation.  Plaintiff alleges that

25   Mayor Kuykendall, in a conversation with Mr. Goodman, "threatened to cancel and/or not

26   renew the City of Prescott's contract with the YHS because of [Plaintiff's] involvement with

27   the PCAB and her participation in the public demonstration against him and other City

28   officials."  Accepting as true that Mayor Kuykendall did make such a threat, the Court does

1    not find that this conduct rises to the level of extreme and outrageous conduct needed to state

2    a claim for intentional infliction of emotional distress.   Accordingly, Count VII for

3    intentional infliction of emotional distress will be dismissed as to all Defendants.

4    ### IV.    LEAVE TO AMEND

5        In the event of dismissal of any of the claims, Plaintiff requests that the Court grant

6    her leave to amend her Complaint.  The Norwood Defendants oppose Plaintiff's request and

7    the Prescott Court Defendants concede that Plaintiff should be given one more opportunity

8    to adequately allege facts to support her claims.

9        The Ninth Circuit has instructed district courts to grant leave to amend, *sua sponte*,

10   when dismissing a case for failure to state a claim, "unless the court determines that the

11   pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203

12   F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.

13   1995)).

14       Because the Court cannot say that the Complaint could not possibly be cured by the

15   allegations of other facts, Plaintiff's request for leave to amend will be granted.  However,

16   throughout her responses in opposition to Defendants' Motions to Dismiss, Plaintiff

17   frequently refers to conclusory allegations as "facts."  In amending her Complaint, Plaintiff

18   is cautioned that such conclusory allegations are not facts and that she must plead actual facts

19   that raise her right to relief above the speculative level.  *Papasan*, 478 U.S. at 286 ("the

20   Court does not have to accept as true a legal conclusion couched as a factual allegation.").

21   ### V.    CONCLUSION

22       Based on the foregoing,

23       **IT IS ORDERED** that the City of Prescott Defendants' Motion to Dismiss (Doc. 6)

24   is denied as to Counts I and III and granted without prejudice as to Counts II, IV, V, VI, and

25   VII, as set forth in this Order.

26       **IT IS FURTHER ORDERED** that the Norwood Defendants' Motion to Dismiss

27   (Doc. 18) is granted without prejudice.

28       **IT IS FINALLY ORDERED** that Plaintiff is granted leave to amend and shall file

an amended complaint within thirty (30) days of the date of this Order.

DATED this 16th day of February, 2012.

_____
James A. Teilborg
United States District Judge